19513. FOSTER *et al. v.* CHEEK, by Guardian, *et al.*

ARGUED NOVEMBER 13, 1956—DECIDED JANUARY 14, 1957—REHEARING DENIED FEBRUARY 13, 1957.

824

*Hal M. Smith,* for plaintiffs in error.

*A. R. Ross, Will Ed Smith,* contra.

WYATT, Presiding Justice. 1. The plaintiff in error first contends that the alleged contract of adoption ought not to be specifically performed because there was no valid contract, for the reason the alleged agreement was made with persons who were not competent to contract with reference to the subject matter of the alleged contract. Without deciding whether or not a person or persons having the parental powers is a competent party to

make a valid contract for the adoption of a minor child in his custody and control, such as a court of equity will specifically enforce upon the death of the adopting party without making a legal adoption of the said child—there is another applicable rule of law which controls this contention adversely to the plaintiff in error, whatever the answer to this question might be. This rule of law is that a contract of adoption of a minor child, though made in the first instance with one not legally authorized to make such a contract, may thereafter be ratified by the person or persons who were legally authorized to make such a contract so as to entitle said contract to be specifically enforced in equity if the adopting party fails to secure a legal adoption. See, in this connection, *Crawford* v. *Wilson*, 139 *Ga.* 654 (78 S. E. 30, 44 L. R. A. (NS) 773) ; *Mock* v. *Neffler*, 148 *Ga.* 25 (95 S. E. 673) ; *Pierce* v. *Harrison*, 199 *Ga.* 197 (33 S. E. 2d 680).

In the instant case, the allegations of the petition are sufficient to show an acquiescence in and a ratification of the contract in question by the mother of the child, who was certainly the only person, other than the grandparents, that it could have been contended would be authorized to make the contract. The petition alleges that the mother of the child was present when the contract was alleged to have been made; that she at the same time agreed to resume her parental relationship; that the proposition was accepted by the grandparents, and the child was immediately taken to the home of David K. and Margie H. Foster; that she lived in said home from that time until the deaths of the Fosters some four years later. These allegations certainly show an acquiescence in and ratification of the contract made between David K. Foster and Mrs. Nell C. Harrell within the rulings of the cases above cited.

2. It is next contended that the contract in question is not entitled to be specifically enforced for the reason it was without consideration. This court has decided that the consideration required under such contract as is here involved may be the detriment to the party surrendering the child; the change in the domestic status of the child; the benefits in love and affection and services accruing to the adopting party. See *Savannah Bank & Trust Co.* v. *Wolff*, 191 *Ga.* 111 (11 S. E. 2d 766) ; *McWilliams* v. *Pair*, 151 *Ga.* 168 (106 S. E. 96). It is not necessary to allege

the particular value of the services which were performed or were to be performed by the person to be adopted. *Rieves* v. *Smith*, 184 *Ga.* 657 (192 S. E. 372, 112 A.L.R. 368). The petition in the instant case alleges that the grandparents surrendered their custody of the child; that the child's domestic status was changed and she went to live in a new home with new associations, and into the custody and control of new persons; that she rendered to them the love and affection and the services of a dutiful child. This is certainly a sufficient consideration for the contract in question.

It is contended, however, that the rulings in *Taylor* v. *Boles*, 191 *Ga.* 591 (13 S. E. 2d 352), and *Fargason* v. *Pope*, 197 *Ga.* 848 (31 S. E. 2d 37), demand a contrary ruling. We do not agree with this contention. In those two cases, the parent of the child, having custody and control of said child, married the adopting party and made the contract with the adopting party. It was there held in effect that the consideration relied upon in the usual virtual-adoption cases would not necessarily be sufficient where the adopting person is the step-parent, "and it does not appear that the same situation would not have prevailed without regard to the adoption contract." *Taylor* v. *Boles*, supra, headnote 2. In other words, it does not appear in those cases that the changed domestic status of the child, the love and affection and services rendered by the child, and other changes in status, resulted from the adoption contract rather than from the fact that the child became the "stepchild" of the adopting party. This is not true in the instant case, since it appears that the various changes in status on the part of all parties came as a direct result of the contract and not by reason of the marriage of the mother of the petitioner, who did not have custody of petitioner, to the adopting party.

It therefore follows, from what has been said above, that the petitioner in the instant case is entitled to have a court of equity specifically enforce the contract here involved.

3. The next question presented is, whether or not this petitioner, who, as held above, is entitled to have the contract of adoption specifically performed, is entitled to the proceeds of the insurance policy in question. The policy of insurance was issued under the provisions of the Federal Employees Group Life Insur-

ance Act as set out in 5 U. S. C. A., Ch. 24, §§ 2091-2103, and contains identical provisions with reference to beneficiaries as the above cited act. These provisions, in so far as is material here, are as follows: First, to the named beneficiary, if any. Secondly, if no named beneficiary, to the widow or widower of the employee. Thirdly, if none of the above, to the child or children of the employee and the descendants of deceased children by representation. Fourthly, if none of the above, to the parents of such employee or the survivor of them.

In the instant case, there was no designated beneficiary. The employee and his wife died in a common disaster, and the petition alleges that the petitioner is unable to determine whether her mother survived or predeceased the employee. The third order of payment is to the child or children of the employee, under which the petitioner claims to be entitled to the proceeds of the policy. The defendant in the court below, the mother of the employee, contends that the plaintiff is not entitled to the proceeds of the policy, since she is not a child of the employee, but that the defendant is entitled to the proceeds of the policy under the fourth order of payment. The question, therefore, is whether or not the plaintiff in the court below is entitled to receive the benefits of the insurance policy in question as a child within the provisions of the Federal Employees Group Life Insurance Act, supra, and the terms of the policy.

We recognize that the Congress can define, and in a number of cases has defined, the word "child" in its acts. However, in the instant case, neither the Federal Group Life Insurance Act nor the insurance contract has defined that term as used in the act in question. There being no Federal law of domestic relations, which is primarily a matter of State concern (DeSylva v. Ballentine, 351 U. S. 570, 76 Sup. Ct. 974, 100 L. ed. 1415), we must look to the law of this State in order to determine whether or not the defendant in error in the instant case occupies the position of a "child" under the provisions of the act above· referred to and the policy of insurance involved.

In the beginning, it is clear from many decisions of this court that, under a virtual adoption, no relationship of parent and child is created, but it is only a court-given name to a status arising from and created by contract where one takes and agrees

to legally adopt the child of another but fails to do so. *Baker* v. *Henderson*, 208 *Ga.* 698 (69 S. E. 2d 278), and *Rahn* v. *Hamilton*, 144 *Ga.* 644 (87 S. E. 1061). It is also clear that the proceeds of this insurance policy are not and do not become a part of the estate of the deceased employee and do not pass under the laws of inheritance, but do pass directly to the beneficiary under the terms of the policy. *Saville* v. *Lee*, 43 *Ga. App.* 263 (158 S. E. 441).

Under the terms of the act of the General Assembly passed in 1949 (Ga. L. 1949, p. 1157, as codified in Code, Ann. Supp., § 74-414), it is clear that this child, if the legal adoption had been made by the deceased employee, would have been entitled as a child to the proceeds of this policy of insurance. Since that was not done, she has come into a court of equity seeking to enforce her rights under a contract which, if it had been complied with, would have entitled her to the benefits under the policy of insurance. The relief which equity grants in cases of virtual adoption is the equivalent of the benefit the child would have received had the adopter performed his contractual obligation to formally and legally adopt the child involved. *Crawford* v. *Wilson*, 139 *Ga.* 654, supra; *Ware* v. *Martin*, 207 *Ga.* 512 (63 S. E. 2d 335). Since under the allegations of the petition, one of the benefits which the plaintiff in the court below would have received if the contract had been fully performed would have been to receive the proceeds of the insurance policy in question, equity will grant the relief prayed for; and, if the plaintiff successfully proves her case, will decree that this child is entitled to the said proceeds as a child of the deceased employee. It follows, therefore, that the judgment of the court below, overruling the general demurrer to the petition, was not error.

*Judgment affirmed. All the Justices concur.*