24644.    HANDLEY, Administratrix v. LIMBAUGH.

SUBMITTED MAY 14, 1968—DECIDED JUNE 20, 1968.

*Malone, Drake & Malone, Thomas Wm. Malone,* for appellant.
*Lee & Hitchcock, Sara L. Hitchcock,* for appellee.

MOBLEY, Justice. This appeal by Mary Handley, administratrix of the estates of Claude and Luna Limbaugh, deceased, is from a judgment and decree declaring Marvin Lee Limbaugh entitled to inherit from the two deceased persons because of their contract to adopt him, and his virtual adoption by them. The appellant enumerates as error the denial of her motion to dismiss the petition, the denial of her motion for a directed verdict, the entry of the judgment on the jury verdict, and the admission of certain evidence at the trial.

■ The appellant asserts that the complaint did not allege the existence of a contract to adopt the complainant, and that it was therefore error to deny the motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

"A parol obligation by a person to adopt the child of another as his own, accompanied by a virtual though not a statutory adoption, and acted upon by all parties concerned for many years and during the obligor's life, may be enforced in equity upon the death of the obligor, by decreeing the child entitled as a child to the property of the obligor, undisposed of by will." *Crawford v. Wilson,* 139 Ga. 654 (1) (78 SE 30, 44 LRA(NS) 773); *Richardson v. Cade,* 150 Ga. 535, 538 (104 SE 207); *Ansley v. Ansley,* 154 Ga. 357 (114 SE 182); *Stith v. Willis,* 219 Ga. 62 (131 SE2d 620). An "agreement to adopt" is an essential element of the contract which equity will enforce in an action to declare a person to be entitled to inherit as the "virtually" adopted child of an intestate. *Jones v. O'Neal,* 194 Ga. 49, 52 (20 SE2d 585).

The complaint alleged that the complainant (appellee), Marvin Lee Limbaugh, was the son of Versey Mae Bryan and Homer C. Bryan, and that his mother died in May, 1926, when he was one year old. The allegations relating to the contract sought to be enforced are as follows: "Immediately following the death of his wife, Homer C. Bryan entered into an oral agreement with Claude 'L' William Limbaugh and his wife, Luna Casey Limbaugh, whereby Homer C. Bryan agreed to let the Limbaughs adopt petitioner. Under the terms of their agreement, Homer C. Bryan agreed to relinquish all of his parental rights to your petitioner to the Limbaughs in consideration of the Limbaughs'

agreement to support, rear and educate petitioner as their own son. Upon making such agreement with Homer C. Bryan to adopt petitioner, Claude and Luna Limbaugh carried petitioner, who was then one year and three days old, to their home in Worth County, Georgia. Claude and Luna Limbaugh had no children of their own, and pursuant to their agreement with Homer Bryan, they gave petitioner the name of Limbaugh, supported, reared and educated him, always treated him as their son, and did, during their lifetimes, hold him out to the public as their son . . . Claude and Luna Limbaugh did not, to petitioner's knowledge, ever initiate statutory adoption proceedings to adopt petitioner, but they, together with Homer Bryan, acted upon the terms of their agreement throughout their lifetimes."

It was alleged that Claude and Luna Limbaugh died intestate in a common automobile accident, that the appellant was appointed permanent administratrix of both estates, and that she refuses to recognize the right of the appellee to inherit the estates of his foster parents, and "refuses to fulfill the terms of his foster parents' contract with Homer C. Bryan to adopt" him.

The allegations of the complaint plainly assert that the father of the appellee entered into an oral agreement with the foster parents to allow them to adopt the appellee, and a reasonable construction of the allegations is that the foster parents agreed to adopt him. All of the other essential elements of a virtual adoption case were alleged. The trial judge, therefore, did not err in refusing to dismiss the complaint for failure to state a claim upon which relief can be granted.

■ "An oral contract of adoption must be definite and specific, based upon a sufficient legal consideration, and the proof of such contract must be clear, strong and satisfactory." _Ray v. Kinchen,_ 166 Ga. 788 (1) (144 SE 317) ; _Chamblee v. Wayman,_ 167 Ga. 821, 828 (146 SE 851). The appellant asserts that the existence of a contract to adopt was not satisfactorily proved, and that her motion for directed verdict on this ground should have been granted.

Nathan Driskell, a brother of the deceased mother of the appellee, and half brother of Claude Limbaugh, testified that: His sister, Mrs. Homer Bryan, died in 1926, when he was about

16. The appellee was a few days more than one year old at that time, and there were two older children in the family. On the day that his sister was buried, his father and mother, Claude and Luna Limbaugh, and Homer Bryan were at the home of his parents, and he remembers overhearing a conversation as follows: "Well, Luna first said that she would be glad to do whatever she could with the kids; she would be glad to take the baby, Marvin, and Claude spoke up and said that he would make him a home and support in whatever he needed, but he didn't want to take the child and then Homer get married again a year or two years later and come and ask for the baby after they had done got attached to him and it would be just like giving up his heart or one of his own if it were to be and he didn't want to take it and keep it for a while and then give it up. Homer promised that he would not interfere; he would never ask for him if they would take him and they agreed and they carried the baby home with them that night." That was all the witness could recall that they said, because he "went on out to tend to the mules and stock on the outside."

Homer Bryan, the father of the appellee, was dead at the time of the trial. H. B. Bryan, a cousin of Homer Bryan, was asked if Homer Bryan ever gave him a reason why he gave the appellee to the Limbaughs, to which he replied: "Yes, ma'am; he did. He told me a number of times that in his type of work, of construction work, that he was not able to see after the child himself and he gave him to the Limbaughs for adoption where the child would have a home and could be taken care of and that he would not have to take the child and jump around all over the country from one construction company to another."

Mabel Bryan Edens, a relative of Homer Bryan, in whose home he had lived on numerous occasions, stated that she talked with Homer Bryan a lot about the appellee, and she stated: "Well, many times I asked him why he gave Marvin to them to adopt him and he said that it was because he traveled when he was a child, and he did construction work and carpentry work or something of that sort and he couldn't take care of Marvin. He knew that Luna and Claude would and could and he said he gave him to them because they said they would raise and adopt him,

which they did." On cross examination she stated that Homer Bryan told her that the Limbaughs "told him that they would adopt him [appellee] and raise him." In regard to conversations with the Limbaughs, she testified: "Well, they discussed it over the years that when Homer gave them Marvin, gave Marvin to them, he said—now, Luna and Claude have said this in my presence ever since I was a child even in the presence of my parents, that Marvin was given to them to adopt because Homer could not afford to take care of him traveling around."

While the essential element of a virtual adoption case, the agreement to adopt, was missing in the testimony of Nathan Driskell concerning a conversation between the Limbaughs and the father of the appellee, it appears that he may not have heard all of this conversation, and the testimony of witnesses that the appellee's father had stated that an agreement to adopt was made would be sufficient to show that the adoption of the appellee was a part of the understanding between him and the foster parents.

The evidence was sufficient to prove the contract to adopt, and virtual adoption thereunder, with the requisite degree of certainty, and it was not error to refuse to direct a verdict for the appellant, nor was it error to enter a judgment on the jury verdict for the appellee.

■ It is asserted that it was error to admit the testimony of Nathan Driskell concerning the general reputation in the family of the relationship existing between Claude and Luna Limbaugh and the appellee. At the time this witness was asked whether he was familiar with the family repute of the relationship of Marvin Limbaugh with Claude and Luna Limbaugh, the appellant objected because the family reputation had no bearing on the contract itself, and was immaterial and irrelevant. This witness stated that it was the general reputation in the family that the Limbaughs treated the appellee as their own child. This witness had already testified from his personal knowledge that the appellee was known by the name of Limbaugh after the foster parents took him into their home, and that the Limbaughs referred to the appellee as their son.

The evidence of family reputation was not offered to prove

the fact of the contract, but to prove that there was a virtual adoption of the appellee. The evidence was not subject to the objection made to it.

■ It is asserted that it was error to admit the testimony of H. B. Bryan, Nathan Driskell, and Mabel Bryan Edens "concerning statements made by Homer C. Bryan tending to support the contentions of the plaintiff [appellee]." The appellant objected to any testimony as to statements of Homer C. Bryan, because he was a party to the contract, and received benefit under the contract, would not be permitted to testify if alive, and that statements made by him should not be permitted in evidence.

We understand that it is the contention of the appellant, under the objections made, that the appellee's father, if alive, would not be allowed to testify as an "opposite party" in an action defended by the representative of a deceased person under *Code* § 38-1603 (1), and that statements made by him, related by witnesses, would for that reason not be admissible.

This court has held that the parent having custody of a child, who makes a contract to surrender the child for adoption by another, is not incompetent to testify, under this Code section, in an action by the child to enforce the contract. *Crawford v. Wilson*, 139 Ga. 654 (3), supra. See also *Jackson v. Gallagher*, 128 Ga. 321 (1) (57 SE 750).

■ The question was not made by the objection that the evidence was inadmissible as hearsay, but we will consider this question, since the appellee relied on this testimony, in part, to establish the contract to adopt, and hearsay testimony which is not admissible under some exception to the rule prohibiting it, even though admitted without objection, has no probative value. *Eastlick v. Southern R. Co.*, 116 Ga. 48 (42 SE 499); *Dowling v. Doyle*, 149 Ga. 727, 731 (102 SE 27); *Berry v. Brunson*, 166 Ga. 523, 532 (143 SE 761); *Higgins v. Trentham*, 186 Ga. 264 (1) (197 SE 862); *Poole v. Duncan*, 202 Ga. 255, 258 (42 SE2d 731).

*Code* § 38-309 provides: "The declarations and entries by a person, since deceased, against his interest, and not made with a view to pending litigation, shall be admissible in evidence in

any case." The testimony in regard to statements of the father of the appellee concerning the agreement of the Limbaughs to adopt the appellee was given by witnesses having no pecuniary interest in the case. The declarations of the deceased were made by one of the few persons having personal knowledge of the facts of the agreement in connection with the surrender of the appellee to the Limbaughs. The declarations were not self-serving, and they were made at a time when no litigation was in view. The surrender by the father of his child to another for adoption, while having the material advantage to the father of relieving him of the support of his child, had the immeasurable detriment of irrevocably depriving the father of the love and companionship of the child. Such a detriment to a parent has been held to be of sufficient value to constitute a consideration for the contract of adoption, which is enforceable in equity. *McWilliams v. Pair*, 151 Ga. 168 (1) (106 SE 96); *Savannah Bank &c. Co. v. Wolff*, 191 Ga. 111, 116 (11 SE2d 766); *Foster v. Cheek*, 212 Ga. 821, 825 (96 SE2d 545). These declarations of the appellee's father were therefore admissible under *Code* § 38-309, as declarations by a person, since deceased, against his interest, and not made with a view to pending litigation.

■ It is contended that: "The trial court erred in admitting testimony of plaintiff [appellee] concerning his relationship with Claude and Luna Limbaugh." Since the appellee was the "opposite party" in an action defended by the personal representative of deceased persons, he was incompetent under *Code* § 38-1603 (1) to testify as to "transactions or communications" with such deceased persons. *Thompson v. Riggs*, 193 Ga. 632, 636 (19 SE2d 299). This does not mean that the appellee could not give any testimony whatsoever at the trial. The only testimony given by the appellee pointed out as objectionable was that he referred to his deceased foster parents as his "father" and "mother" while giving his testimony. This would not come within the meaning of "transactions or communications" with deceased persons, under *Code* § 38-1603 (1), and there is no merit in this assignment of error.

■ It is asserted that it was error to admit in evidence a certified copy of the appellee's discharge from the United States

Navy. This discharge was introduced to show that the appellee served in the armed services under the name of Marvin Lee Limbaugh, and not under the name of his real father. The objection to the evidence was that it had no relevancy on the issue to be decided, and the appellant argues that the only issue in the case was whether there was a contract to adopt, and that the discharge had no relevancy on this issue.

The contract to adopt is an essential element in what is generally referred to as a "virtual adoption" case, but there are other necessary elements which make up the cause of action, one of these being that the foster parents took the child in their home and treated him as their own son, thus "virtually" adopting him. The discharge was relevant on this latter issue, in showing that the appellee went under the name of his foster father while in the service of his country in the Navy.

*Judgment affirmed. All the Justices concur.*