44852, 44853. LIMBAUGH v. WOODALL et al. (two cases).

WHITMAN, Judge. These cases involve actions for wrongful death by one claiming a relationship to the decedents by virtual adoption.

Claude William Limbaugh and his wife, Luna Casey Limbaugh, were both killed in an automobile wreck on November 6, 1966. Marvin Lee Limbaugh brought an action against the administratrix of the decedents' estate to establish his relationship with the decedents under the law of virtual adoption. He alleged he was 42 years old and was born the natural son of Versey Mae Bryan and Homer C. Bryan, both also deceased. A trial was had and a verdict was returned in Limbaugh's favor. The final judgment and decree entered therein reads as follows: "[I]t is hereby considered, ordered, adjudged and decreed as follows: 1. The verdict of the jury is hereby made the judgment and decree of this court. 2. That Marvin Lee Limbaugh is hereby declared to be the adopted son of Claude 'L' William Limbaugh and Luna Casey Limbaugh, husband and wife, now deceased, and to have been the adopted son of such deceased parties at the time of their deaths on November 6, 1966. 3. That Marvin Lee Limbaugh is hereby declared to be an heir at law of Claude 'L' William Limbaugh and Luna Casey Limbaugh, deceased, and he is entitled to inherit from their respective estate in the same manner and to the same extent as a natural child would inherit from blood parents under the laws of descent and distribution. 4. That Marvin Lee Limbaugh shall be considered in all respects as if he were a child of natural body issue of Claude 'L'· William Limbaugh and Luna Casey Limbaugh, deceased, and shall enjoy every right and privilege of a natural child."

The decree was affirmed in *Handley v. Limbaugh*, 224 Ga. 408 (162 SE2d 400). Thereafter, Limbaugh brought the wrongful death actions, which are the subjects of these appeals, against Harriet Joan Woodall and Charles Woodall. It was alleged that an automobile owned by Charles Woodall which he kept and used for the pleasure, comfort and convenience of his family, was negligently driven by his minor daughter, Harriet Joan Woodall, head-on into the Limbaughs' automobile, resulting in their injury and death. The Woodalls' motions for summary judgments were granted and Marvin

Lee Limbaugh has appealed, enumerating the orders as error. *Held:*

1. The sole question presented by the appeals is whether one whose relationship to a decedent is a child by virtual adoption (by a decree entered subsequent to such decedent's death) may maintain an action for the wrongful death of the decedent.

In *Avery v. Southern R. Co.*, 44 Ga. App. 613 (162 SE 648), the petition of a plaintiff in an action for wrongful death alleged that when she was a widow 36 years of age and an invalid without means of support, she was approached by Mr. and Mrs. Johnson (her sister and brother-in-law), who stated to her that if she would go and live with them and work for and help them as though she was one of the family, "they would adopt her as their adopted daughter, and make her one of the family and an heir to their estate, and that she accepted said proposition." She further alleged that she worked with them and did for them the same as though she was their daughter without any consideration other than that she would be adopted by the Johnsons as their legal heir and daughter; that she went and remained with her foster parents and performed all the duties required of her as an adopted daughter; and that she was so doing at the time they were killed by the defendant's train.

This court held that the petition stated no cause of action, observing at page 615: "Whether the provisions of the statute would be applicable to a child who has been actually adopted in the manner and form prescribed by law (see, in this connection, Civil Code of 1910, § 3016; 11 CJ 752), the language thereof can not be so liberally or loosely interpreted as to include a person who has not at least been legally adopted and who claims the right to be dealt with as a child merely by reason of some contract made and entered into between the claimant and the persons designated as foster parents. [Cits.] The statute does not include a person who occupied only a quasi-filial relationship to the decedent for whose homicide recovery is sought."

In *Weems v. Saul*, 52 Ga. App. 470 (183 SE 661), this court held that no cause of action was stated where a minor child sued to recover for the homicide of one who had raised and maintained him for seven years and who had agreed to stand in loco parentis to him until he reached his majority. Custody

of the plaintiff, then about 5 years old, had been relinquished by his mother, while on her deathbed, to her daughter, the plaintiff's elder sister. It was alleged that the sister had performed all the duties of a parent to plaintiff, expending at least $750 per year in his interest for support, maintenance and education and that she had "adopted petitioner as her child, although the statutory formality incident to adoption was never complied with."

In *Marshall v. Macon Sash, Door &c. Co.*, 103 Ga. 725 (30 SE 571, 41 LRA 211, 68 ASR 140), three minor children sued for the wrongful death of their stepfather, alleging they were his only heirs, he having left no widow and no other children; that he married their mother eight years prior to his death and from that time until his death he had maintained and supported the plaintiffs as his children, rearing them and exercising complete parental control, by consent of their mother and of themselves, until the date of his death. It was contended by the plaintiffs that the stepfather stood in loco parentis as to them, and that they could recover damages for his negligent homicide. Our Supreme Court affirmed the lower court's dismissal of the petition on the ground that stepchildren have no right of action for a homicide of a stepfather under the law of Georgia. The court observed at page 727: "The right of action provided for in the . . . [wrongful death statute] did not exist at common law. This statute is, therefore, in derogation of the common law; and applying to it the universal rule of strict construction, we can not see how there is any escape from the conclusion that the legislature never contemplated giving a child any right of action for the homicide of a stepparent."

In our view, the above authorities hold that the terms "child" or "children" as used in our wrongful death statutes do not encompass one claiming to be like a child as to another acting in loco parentis, even when such relationship obtains under an agreement to "adopt" but the legal adoption has never transpired.

2. Limbaugh strenuously contends that the 1949 amendment (Ga. L. 1949, p. 1157) to the 1941 Adoption Act (Ga. L. 1941, pp. 300 et seq.), the language of which was still in force and effect at the time of the decedents' death, had the effect of impliedly amending the wrongful death statutes so as to make the rights of an adopted child coextensive with those of a natural child thereunder.

The statute relied on, *Code Ann.* § 74-414, provides, among other things, that: "[An] . . . adopted child shall be considered in all respects as if it were a child of natural bodily issue of petitioner or petitioners, and shall enjoy every right and privilege of a natural child of petitioner or petitioners; and shall be deemed a natural child of petitioner or petitioners to inherit under the laws of descent and distribution in the absence of a will and to take under the provisions of any instrument of testamentary gift, bequest, devise or legacy unless expressly excluded therefrom." Ga. L. 1941, pp. 300, 305; 1949, p. 1157; 1957, pp. 339, 340; 1961, p. 219; 1962, pp. 524, 525; 1966, pp. 212, 213.

The question of whether a statutorily adopted child (who by law loses all legal relationship with its natural parents and gains the same legal relationship with its adoptive parents) may bring an action for the wrongful death of its adoptive parents has apparently not been decided in Georgia. And we cannot and do not decide that question in this case, since there is no legal or statutory adoption involved. As to the rule which obtains in the few jurisdictions in which a statutorily adopted child has pursued an action for the wrongful death of its adoptive parents, see Annot. 94 ALR2d 1237.

It goes without saying that one cannot be legally or statutorily adopted by another after the latter is deceased. What might have been done went undone. But where one has promised to adopt the child of another as his own, which carries with it a right of inheritance by the child, and the agreement is accompanied by a virtual though not a statutory adoption, and is acted upon by both parties during the obligor's life, the equities growing out of the agreement "may be enforced, upon the death of the obligor, by adjudging the child entitled as a child to the property of the obligor who dies without disposing of his property by will." *Crawford v. Wilson,* 139 Ga. 654, 658 (78 SE 30, 44 LRA (NS) 773).

The equitable principle of considering done what ought to have been done with regard to an unperformed contract to adopt has not, to our knowledge, ever been extended beyond decreeing in the child a right to inheritance or a right to receive as a beneficiary under some types of insurance policies. The relation of parent and child does not arise from virtual adoption. *Baker v. Henderson,* 208 Ga. 698, 702 (69 SE2d 278); *Foster v. Cheek,* 212 Ga. 821, 827 (96 SE2d

545). It has been held that relationship by virtual adoption of a juror to a party in a damage suit does not render the juror incompetent. *Collins v. Griffin,* 93 Ga. App. 282, 285 (91 SE2d 369).

Finally, we cannot read into our wrongful death statutes, which are in derogation of the common law, that a child who has two parental relationships *at the same point in time,* may bring wrongful death actions on either. Such would not have to be the case with a legal adoption which severs one parental relationship and creates a new one. But such would be the case with a virtually adopted child who may have one or both of his natural parents still in life. This is for the reason that dependency upon a parent is not now (except as to illegitimates) a necessary element for recovery in a wrongful death action. *Peeler v. Central of Ga. R. Co.,* 163 Ga. 784 (2) (137 SE 24); *Petty v. Louisville & N. R. Co.,* 39 Ga. App. 689 (2) (148 SE 308); *Code Ann.* §§ 105-1302, 105-1306.

The trial court did not err in granting the defendants' motions for summary judgments in both cases.

*Judgments affirmed. Bell, C. J., Hall, P. J., Eberhardt and Pannell, JJ., concur. Jordan, P. J., Deen, Quillian and Evans, JJ., dissent.*

ARGUED OCTOBER 7, 1969—DECIDED MARCH 16, 1970—
REHEARING DENIED APRIL 3, 1970—

*Lee & Hitchcock, William S. Lee,* for appellant.

*Farkas, Landau & Davis, Jimmy Davis, Edmund A. Landau, Jr.,* for appellees.

EBERHARDT, Judge, concurring. The majority opinion ably expounds the law applicable to this situation; there is little that could be added. A virtual adoption is not a legal adoption. It creates no legal rights, but simply enforces contract rights in equity. "[U]nder a virtual adoption, no relationship of parent and child is created, but it is only a court-given name to a status arising from and created by contract. . ." *Foster v. Cheek,* 212 Ga. 821, 827 (96 SE2d 545). "Counsel for the plaintiff has cited no case to this court, and we have found none, where an adopted child, under [the virtual adoption

statute], has been held entitled as an heir to inherit . . ."
*Dye v. Ghann,* 216 Ga. 743, 749 (119 SE2d 700). "A contract
by a person to adopt a child of another as his own 'is not
self-operating; heirship does not grow out of it.' *Parnelle v.
Cavanaugh,* 191 Ga. 464, 465 (1) (12 SE2d 877); *Crawford v.
Wilson,* 139 Ga. 654 (78 SE 30, 44 LRA (NS) 773); *Baker v.
Henderson,* 208 Ga. 698, 702 (b) (69 SE2d 278)." *Banes v.
Derricotte,* 215 Ga. 892, 895 (114 SE2d 12). "A court of
equity has no power to grant the special prayer: 'That your
petitioner be declared by the court to be the child and heir at
law of J. J. Collins and Lizzie Collins, both deceased.'" *Stith
v. Willis,* 219 Ga. 62 (2) (131 SE2d 620).

Until the adoption of Lord Campbell's Act there was no
right of recovery for the wrongful death of one's parent. The
statute is in derogation of the common law, and cannot be ex-
tended by the courts to grant rights not specifically included by
its terms. *Bloodworth v. Jones,* 191 Ga. 193, 194 (11 SE2d 658),
and citations.

*Code* § 105-1302 provides for the recovery by "a child or
children" for the wrongful death of a parent.[1] Since neither the
virtual adoption statute nor a court decree can create the rela-
tionship of parent and child, there can be no right of recovery
here. It is not the kind of thing that was or could have been
included in the contract for adoption, nor could it be extended
under equitable powers of the court in enforcing rights under
the contract.

Before giving a very liberal construction to the wrongful death
statute it should be noted that in three recent cases (two whole
court) this court has followed the previous decisions of this court
and the Supreme Court in holding that the "wrongful death Acts,
being statutory rather than common-law remedies, are strictly
construed." *St. Paul Fire &c. Co. v. Miniweather,* 119 Ga. App.
617 (1) (168 SE2d 341); *Horton v. Brown,* 117 Ga. App. 47

---

[1] Prior to the amendment of 1924 (Ga. L. 1924, p. 60) it was
held that a married daughter, though an only minor child, could
not recover for the wrongful death of her father. *Beale v. Ga.
R. &c. Co.,* 150 Ga. 774 (105 SE 447).

(159 SE2d 489), cert. denied, 117 Ga. App. 879; and *Harrell v. Gardner,* 115 Ga. App. 171 (154 SE2d 265). In the *Miniweather* case we held that for this reason a stepchild cannot recover under the wrongful death Acts for the death of a stepparent.

*Code Ann.* § 74-414 makes a legally adopted child the same as a natural child under the wrongful death Acts. However, the rub is that under the decisions of this court and the Supreme Court a virtual adoption is not a legal adoption and creates no legal rights.

The "law on this question is not simply what the judges of this court think the law *should be,* but what the General Assembly has said it is." *Horton v. Brown,* 117 Ga. App. 47, 49, supra.

Let us look at the last action of the legislature on this subject. A key to this intent is the right of a person to inherit. For example, a natural child, whether a minor or an adult, can recover under these Acts irrespective of the question of dependency. Prior to 1960, an illegitimate child could inherit from his mother but not his father; however, he could not bring an action for the wrongful death of even the mother. The law was amended in 1960 by the legislature to allow a *dependent* illegitimate child to recover for the wrongful death of the mother. *Code Ann.* § 105-1306. The legislature did not see fit to extend the right of an illegitimate child to recover for the wrongful death of the father. *Code* § 105-1302. Nor did it even see fit to extend the right of an illegitimate child (who could inherit) to recover for the wrongful death of the mother where there was no dependency. How, then, can it be said that it was the intent of the General Assembly to extend the right of a child that has *no legal right to inherit* and who has *not been legally adopted* to bring an action for the wrongful· death of a person whose relationship is less than that of one created by bastardy?

I am authorized to state that Presiding Judge Hall concurs in these observations.

EVANS, Judge, dissenting. I cannot agree to the majority view holding that the trial court did not err in granting defendants' motions for summary judgments. The majority take the position that the old decisions holding that the death statute, being in derogation of the common law, must be strictly construed,

and, under the circumstances, a child by virtual adoption cannot sue under this statute, even though the adoption laws in this State have since been amended to set forth that an adopted child shall hereafter be considered in all respects as if it were a child of natural bodily issue. See *Code Ann.* § 74-414 (Ga. L. 1941, pp. 300, 305; 1949, p. 1157; 1957, pp. 339, 340; 1961, p. 219, 1962, pp. 524, 525; 1966, pp. 212, 213; 1969, p. 927). The majority seek to avoid a confrontation with this law by holding that a virtual adoption by a court of equity is different from that of a legal or statutory adoption. The legislature of this State declares the public policy, and having done so by amending the adoption statute to allow adopted children to be considered in all respects as if they were children of natural bodily issue, this, of course, results in an amendment, by implication, to the death statute, as well as to the statutory adoption law. A court of equity has declared the party here suing to be an adopted child. The equitable principle of considering done what ought to have been done with regard to an unperformed contract by and between the parties results in this child being entitled to all rights given him under the law. It is my firm opinion that under the law as now written the status of an adopted child is such that he is thereafter entitled to "enjoy every right and privilege of a natural child after the adoption." As stated in 1 Encyclopedia of Georgia Law 486, Adoption of Persons, § 30: "There have been no adjudications interpreting the 1949 amendment to Georgia Code Annotated, section 74-414 which broadens the rights of an adopted child. But the phrase 'said adopted child . . . shall enjoy every right and privilege of a natural child of petitioner or petitioners' seemingly is clear enough to escape the necessity of judicial rewriting. There should be no question that the adopted child can sue for the wrongful death of either of the adoptive parents."

When the General Assembly in 1949 (Ga. L. 1949, p. 1157) amended *Code Ann.* § 74-414, and provided that thereafter adopted children should enjoy every right and privilege of a natural child after the adoption, it was not necessary that each and every statute on the statute books with reference to rights of action, etc., be amended, because the Act of 1949, in Section 3

thereof, provided: "All laws and parts of laws in conflict with this Act are hereby repealed," which Act was approved on February 25, 1949. This being the latest expression of the General Assembly on this question (admitting this Act has been several times since amended but in no material respect as to rights and privileges), then all laws in conflict with it, including the right to sue for wrongful death, were impliedly amended thereby.

I therefore dissent from the judgment of affirmance and the opinion on which it is based. I am authorized to state that Presiding Judge Jordan and Judges Deen and Quillian concur in this dissent.