**Gregory K. Whitchurch, Administrator of the Estate of Tamara Soon Ja Whitchurch v. John D. Perry, M.D., and Central Vermont Medical Center, Inc.**

[408 A.2d 627]

No. 40-79

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed September 17, 1979

466

*Cheney & Brock,* Montpelier, for Plaintiff.

*Debra A. Martin* of *Downs, Rachlin & Martin,* South Burlington, for Perry.

*Barbara E. Cory* of *Dinse, Allen & Erdmann,* Burlington, for Central Vermont Medical Center, Inc.

Hill, J. The administrator of the estate of Tamara Soon Ja Whitchurch commenced this action in the Washington Superior Court against John D. Perry, M.D., and the Central Vermont Medical Center, Inc., alleging that as a direct and proximate result of their negligence the plaintiff's decedent suffered bodily injury, great pain, and death. Damages were sought under Vermont's wrongful death act, 14 V.S.A. §§ 1491–1492, and also under 14 V.S.A. § 1453 which provides, in part, that a cause of action for bodily injury survives the death of the victim. He appeals from an order granting both defendants' motions for summary judgment and dismissing his complaint for failure to state a claim upon which relief can be granted. We reverse in part.

In February of 1974 the plaintiff and his wife applied to the Holt Adoption Program, Inc., to adopt a Korean or Vietnamese child. They had been designated as suitable adoptive parents by the Vermont Department of Social and Rehabilitation Services. With the cooperation of the Korean Ministry of Foreign Affairs and the United States Immigration and Naturalization Service, the Whitchurches were given custody of Soon Ja Kim (renamed Tamara Soon Ja Whitchurch), a six month old Korean girl abandoned by persons unknown at the police station in Seoul, Korea.

Prior to receiving custody of Tamara and "for the purpose of adoption," the Whitchurches executed a "placement

agreement" with the Holt Adoption Program and the Vermont Department of Social and Rehabilitation Services. Under this agreement the Adoption Program remained the child's legal guardian, and the Whitchurches agreed not to request an adoption for at least six months. This waiting period corresponded to a time limitation imposed by Vermont law before a final decree of adoption may issue. See 15 V.S.A. § 440. Furthermore, the adoption could not take place without a recommendation from Social and Rehabilitation Services and the written consent of the Adoption Program. The placement could be terminated during the waiting period if, in the Adoption Program's "professional judgement," it was not in the child's best interests or "unforeseen circumstances" prevented the Whitchurches from completing the adoption.

On February 18, 1976, approximately two months prior to the time when Tamara's adoption could become final, she was admitted to the Central Vermont Medical Center for treatment of injuries suffered by scalding when a makeshift vaporizer was upset. She died that day, and the events surrounding her treatment and death form the subject matter of this action.

These facts are not in dispute. The question on appeal is whether they entitle both defendants to judgment as a matter of law.[1] We hold that summary judgment was inappropri-

---

[1] We note that the motion filed by the Central Vermont Medical Center requested summary judgment on the wrongful death portion of the complaint only, i.e., partial summary judgment. Although such a motion is specifically authorized by V.R.C.P. 56(b), an order merely granting it and defendant Perry's motion would not have disposed of all the claims against all of the parties. It therefore would not have been final, and this Court would have lacked jurisdiction to hear the appeal. Beam v. Fish, 105 Vt. 96, 97–98, 163 A. 591, 591–92 (1933); V.R.C.P. 54(b); see 10 C. Wright & A. Miller, Federal Practice and Procedure § 2751 (1973). The superior court, however, also dismissed the complaint by ruling that it failed to state a claim against either defendant upon which relief can be granted, a defense raised by the Medical Center in its answer. See generally V.R.C.P. 12(b). In making this ruling, the court considered matters outside the complaint—including an affidavit filed in opposition to the motions for summary judgment—something not contemplated by that particular defense. 5 C. Wright & A. Miller, supra, § 1356 (1969). By considering these matters, the court ruled in substance that there

ate as to the cause of action under 14 V.S.A. § 1453. See Part I, *infra*. However, it was properly granted on the plaintiff's claim under 14 V.S.A. §§ 1491–1492 for damages caused by a wrongful death. See Part II, *infra*.

## I.

Vermont's survival statutes, 14 V.S.A. §§ 1451–1453, abrogate the harsh common law rule that personal tort actions die with the person of the plaintiff or the defendant. See generally W. Prosser, Handbook of the Law of Torts § 126 (1971). Section 1453 authorizes the executor or administrator of an estate to prosecute the cause of action the decedent had, or would have had if death had not ensued. See *Berry v. Rutland R.R.*, 103 Vt. 388, 391, 154 A. 671, 672 (1931).

The superior court granted summary judgment in favor of both defendants on the surviving cause of action because it was "brought for the decedent's estate" and "[t]he prospective adoptive parents could not share in the distribution of the estate." The plaintiff conceded in an affidavit filed in opposition to the motions for summary judgment "[t]hat the biological parents [of Tamara], and any heirs through biological relationships, are unknown . . . and cannot be determined through any investigation in Korea." The court accepted the argument that it was pointless to permit the plaintiff to maintain the action because no beneficiaries stood to recover and, therefore, any proceeds would escheat to the town where Tamara was last an inhabitant.

The defendants admit that this ruling is based upon practical considerations. Practicality, in and of itself, however, does not justify summary judgment. In this case, the allegation is that bodily injury resulting in death was oc-

---

was no genuine issue as to any material fact and that *both* defendants were entitled to judgment as a matter of law, *i.e.*, summary judgment. See V.R.C.P. 56(c). See also V.R.C.P. 12(b). That is how we must review the order, see 6 Moore's Federal Practice ¶ 56.02[3], at 56–33 (2d ed. 1976); the lower court's characterization of the ruling does not bind us. See *McDonald* v. *Woodruff*, 133 Vt. 362, 364, 340 A.2d 90, 92 (1975) (Larrow, J., concurring). This is consistent with the manner in which the parties have proceeded. Such an order is final, so the appeal is properly before us. 10 C. Wright & A. Miller, *supra*, § 2715, at 416.

casioned by the defendants' negligence. That cause of action is within 14 V.S.A. § 1453. See 14 V.S.A. §§ 1452–1453; *Giguere* v. *Rosselot*, 110 Vt. 173, 3 A.2d 538 (1939). The only element of the claim that the trial court could have considered dependent on the existence of beneficiaries is damages. But the damages necessary to sustain a negligence claim under the statute are those suffered by the decedent at and after the injury and prior to death. See *Giguere* v. *Rosselot*, *supra*, 110 Vt. at 183, 3 A.2d at 542. The cause of action rests upon tortious injuries received prior to death, not the existence of beneficiaries to the estate. The grant of summary judgment dismissing this claim was error.[2]

## II.

Vermont's wrongful death act, 14 V.S.A. §§ 1491–1492, does not create a new cause of action but "merely a new right of recovery which attaches to the right of action arising from the original wrong. By it, a new element of damages is engrafted upon [the] right of action" surviving by virtue of the statutes discussed in Part I of this opinion. *Desautels' Adm'r* v. *Mercure's Estate*, 104 Vt. 211, 214, 158 A. 682, 683 (1932).[3] The right to recover these addi-

---

[2] The defendants would have us rule that any recovery in the survival action is for the benefit of the deceased child's estate and that the Whitchurches are not entitled to inherit from that estate. We decline to intimate any view on these questions because they do not affect the plaintiff's right to maintain the survival claim. They must be left for the probate court in the exercise of its jurisdiction over the settlement of estates.

[3] The parties rely on *Needham* v. *Grand Trunk Ry.*, 38 Vt. 294 (1865), for the proposition that where death occurs as a consequence of the tortious act or neglect of another, two causes of action may arise: one to recover damages sustained by the deceased at the time of or after the injury and prior to death; the other to recover damages to the surviving spouse and next of kin. This aspect of the *Needham* case, however—as pointed out by Chief Justice Powers in *Desautels' Adm'r* v. *Mercure's Estate*, 104 Vt. 211, 213, 158 A. 682, 683 (1932)—was overruled in *Legg* v. *Britton*, 64 Vt. 652, 24 A. 1016 (1890). The last two cases firmly establish that Vermont's wrongful death act does not create a new cause of action but merely permits the recovery of additional damages in the cause of action brought under 14 V.S.A. § 1453. *Desautels' Adm'r* v. *Mercure's Estate*, *supra*, 104 Vt. at 213–14, 158 A. at 682–83; *Legg* v. *Britton*,

tional damages is vested in the executor or administrator for the benefit of those persons designated in 14 V.S.A. § 1492(c), the surviving spouse and next of kin. 14 V.S.A. § 1492(a); *Abbott* v. *Abbott*, 112 Vt. 449, 451, 28 A.2d 375, 377 (1942).

■ The plaintiff concedes that "next of kin" within the meaning of 14 V.S.A. § 1492(c) must exist if damages for wrongful death are to be recovered in this action. See *D'Angelo* v. *Rutland Railway Light & Power Co.*, 100 Vt. 135, 135 A. 598 (1927). If the next of kin cannot be ascertained, computation of damages is impossible. He admits that the decedent's next of kin are unknown and cannot be discovered, and claims that in the circumstances of this case an equitable adoption should be decreed to confer that status on him and his wife.

The superior court rejected this argument. It held that an equitable adoption requires the existence of a contract to adopt, that the placement agreement executed by the Whitchurches was not such a contract, and that the Vermont statutes do not recognize prospective adoptive parents as next of kin.

Courts generally apply the doctrine of equitable adoption in cases of intestate succession to permit participation in the estate by a foster child who was never legally, *i.e.*, statutorily, adopted by the decedent. Typically the decedent obtained custody by expressly or implicitly promising the child, the

*supra*, 64 Vt. at 659–60, 24 A. at 1017–18. See generally W. Prosser, Handbook of the Law of Torts § 127 (1971) (this is the minority view).

We acknowledge that some language in *Abbott* v. *Abbott*, 112 Vt. 449, 28 A.2d 375 (1942), contradicts this view. There it is said that the right of action given by the wrongful death act (then P.L. 2859) "is entirely independent of and unrelated to any that the deceased may have had in his lifetime." 112 Vt. at 451, 28 A.2d at 377. We decline to follow this aspect of the *Abbott* case. The conflict between the *Needham* line of cases and those following *Legg* was squarely presented and resolved in favor of the latter by Chief Justice Powers in *Desautels' Adm'r*, see 104 Vt. at 212–14, 158 A. at 682–83, and that decision has not been overruled. Furthermore, the *Abbott* opinion is self-contradictory because it goes on to recognize the interrelationship between the survival statutes and the wrongful death act. 112 Vt. at 451, 28 A.2d at 377.

child's natural parents, or someone *in loco parentis* that an adoption would occur. Custody is transferred and the child lives with the foster parent as would a natural child, but, for one reason or another (usually the promisor's neglect), an adoption never occurs. Upon the foster parent's death, a court, applying the maxim that "equity regards that as done which ought to be done," declares that the child is entitled to share in the estate as if he were a legally adopted child. See Note, *Equitable Adoption: They Took Him Into Their Home and Called Him Fred*, 58 Va. L. Rev. 727 (1972).

These cases rely on one or both of the theories that (1) the decedent's promise is a contract to adopt and for its breach an equitable remedy, limited in application and result, allows the child to participate in the distribution of the estate, see, e.g., *In re Williams' Estates*, 10 Utah 2d 83, 348 P.2d 683 (1960), or (2) the promise or representation misled another to his detriment and this estops the heirs at law from asserting the absence of a statutory adoption as a defense to the foster child's claim against the estate. See, e.g., *Jones* v. *Guy*, 135 Tex. 398, 143 S.W.2d 906 (1940). Both theories require the existence of an agreement to adopt, except an estoppel may be imposed if the foster parents "undertook to effect a statutory adoption but failed to do so because of some defect in the instrument of adoption or in its execution or acknowledgement." *Cavanaugh* v. *Davis*, 149 Tex. 573, 596, 235 S.W.2d 972, 974 (1951), *quoted in* Note, *supra*, 58 Va. L. Rev. at 735. But see Note, *supra*, 58 Va. L. Rev. at 730 ("Some courts rest their decisions solely and squarely on the principles of equity.").

The plaintiff recognizes that this case presents the converse of the usual situation: here the prospective adoptive parents not the child seek the benefit of an equitable adoption. Attempts to obtain such relief have failed because foster parents who through neglect or design breach an agreement to adopt—and those claiming through them—are in no position to invoke the equitable powers of a court. *Heien* v. *Crabtree*, 369 S.W.2d 28 (Tex. 1963). The plaintiff argues for a different result in this case, however, because he and Mrs. Whitchurch were not neglectful in their attempt to adopt Tamara and only were prevented from doing so by the alleged negligence of the defendants.

We acknowledge the ingenuity of plaintiff's argument, but its conclusion is flawed. Courts that recognize the doctrine of equitable adoption also hold that "equity does not have power to decree an adoption." 10 Md. L. Rev. 72, 76 (1949). The doctrine permits enforcement of the promise of inheritance implied from the agreement to adopt, but it does not alter the *status* of the parties. *Id.* Thus in *Limbaugh* v. *Woodall,* 121 Ga. App. 638, 175 S.E.2d 135 (1970), the Court of Appeals of Georgia held that an equitably adopted child may not maintain an action for the wrongful death of his foster parents since the decree does not give rise to the relation of parent and child; it merely confers a right of inheritance. *Id.* at 641, 175 S.E.2d at 138. Accord, *Heien* v. *Crabtree, supra,* 369 S.W.2d at 31.

 *Bower* v. *Landa,* 78 Nev. 246, 371 P.2d 657 (1962), a case relied on by the plaintiff, accepts this as a correct statement of law. See *id.* at 251, 371 P.2d at 660 (quoting 10 Md. L. Rev., *supra,* at 76–77). It is true that in *Bower* the Supreme Court of Nevada permitted an equitably adopted child to maintain an action for the wrongful death of his foster parents, but Nevada's wrongful death statute uses the term "heirs," see Nev. Rev. Stat. § 12.090, which the court held to include "any person entitled to inherit the estate of a decedent." *Id.* at 253, 371 P.2d at 661. The term "next of kin" in Vermont's wrongful death act carries no such connotation. "Next of kin" properly denotes those persons most nearly related to the decedent *by blood,* Black's Law Dictionary 1194 (rev. 4th ed. 1968) (emphasis added), and save for the provisions of 15 V.S.A. § 448 would not include the parties to a statutory adoption.[4] We hold, therefore, that equitable adoption would not confer next of kin status on the plaintiff and his wife so as to entitle them to maintain a claim for Tamara's wrongful death.

---

[4] 15 V.S.A. § 448 provides, in part, as follows:

Upon the issuance of a final adoption decree the same rights, duties and obligations, and the same right of inheritance shall exist between the parties as though the person adopted had been the legitimate child of the person or persons making the adoption, except that the person adopted shall not be capable of taking property expressly limited to the heirs of the body of the persons making such adoption.

*That portion of the trial court's order granting summary judgment in favor of the defendants on the cause of action under 14 V.S.A. § 1453 is reversed, the balance is affirmed, and the cause is remanded.*