516 S.E.2d 35

**Glenell WELCH, Appellant,**

v.

**John Maxwell WILSON, II, Appellee.**

**No. 25211.**

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 17, 1999.

Decided May 17, 1999.

**22**

John D. Wilcox, Esq., Lantz & Tebay, Mineral Wells, West Virginia, Attorney for Appellant.

John Maxwell Wilson, II, Pro Se.

PER CURIAM:

This is an appeal by Glenell Welch (hereinafter "Appellant") from a December 31, 1997, order of the Circuit Court of Wood County, ruling that John Maxwell Wilson, II, (hereinafter "Appellee") was the sole heir of John Maxwell Wilson (hereinafter "decedent"). The Appellant contends that the lower court erred in ruling that she was not equitably adopted by the decedent and in improperly relying upon certain probate records of Mrs. Margaret Wilson, the decedent's wife and the Appellant's grandmother. We reverse the decision of the lower court and remand for entry of an order declaring that the Appellant had been equitably adopted by the decedent.

## I. Facts

The Appellant was born on August 31, 1971, to Glen and Kathy Welch. Within six months of her birth, physical custody of the Appellant was voluntarily transferred to the Appellant's maternal grandmother, Mrs. Margaret Wilson, and her husband, decedent John Maxwell Wilson. Mr. Wilson was the step-grandfather of the Appellant, and Mr. Wilson had one natural child from a previous marriage, Appellee John Maxwell Wilson, II.

Mr. and Mrs. Wilson provided all financial support for the Appellant, and she maintained little contact with her natural parents. Her parents eventually divorced, her father remarried, and her mother moved out of state without further visitation or contact. While the Wilsons did not seek formal adoption, school records indicated that John and Margaret Wilson were the Appellant's parents. The evidence indicated that the Wilsons functioned as the parental authorities for the Appellant for a period of fifteen years, from the time the Appellant was six months of age until the death of Mrs. Wilson in 1986. Mrs. Sandra Welch, Glen Welch's third wife, testified that upon Glen Welch's instruction, she visited the Wilson home to offer to take Glenell from Mr. Wilson's care after the death of Mrs. Wilson. Mr. Wilson allegedly informed Mrs. Welch that he wished to retain custody of Glenell; consequently, the Appellant continued to reside with Mr. Wilson after Mrs. Wilson's death.

In 1988, the Appellant gave birth to a child out of wedlock. Although she lived briefly with her boyfriend and in her own trailer with the child, she continued to reside primarily with Mr. Wilson until she was nineteen years of age, in 1990. When Mr. Wilson was diagnosed with cancer in 1993, Glenell and other family members cared for him in his home. On June 14, 1996, Mr. Wilson died intestate.

Pursuant to West Virginia Code § 42–1–9 (1998), entitled "Establishment and Recordation of Descent," the Appellant filed a Petition for Determination of Heirship in the lower court, alleging that she had been equitably adopted by the decedent. Subsequent to a bench trial, the lower court denied the petition and ruled that the Appellant had

failed to establish sufficient facts to prove that she had been equitably adopted by the decedent. The Appellant appeals that ruling to this Court.

## II. Standard of Review

■ We expressed the following standard of review in syllabus point four of *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996): "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed de novo."

## III. Discussion

■ The Appellant asserts that the lower court erred in failing to find that she had been equitably adopted by the decedent, and further asserts that the lower court improperly relied upon certain probate records of Mrs. Margaret Wilson.[1] Our seminal case on the issue of equitable adoption is *Wheeling Dollar Savings & Trust Co. v. Singer,* 162 W.Va. 502, 250 S.E.2d 369 (1978). Syllabus point two of *Singer* explained as follows:

> The doctrine of equitable adoption is hereby incorporated into the law of West Virginia, but a litigant seeking to avail himself of the doctrine in a dispute among private parties concerning trusts or the descent of property at death must prove by clear, cogent, and convincing evidence[2] that he has stood from an age of tender years in a position exactly equivalent to that of a formally adopted or natural child; provided, however, that the same strict

standard of proof does not apply to the determination of dependency under any State remedial statute conferring State government benefits which must be liberally construed to effect its purpose.

162 W.Va. at 502, 250 S.E.2d at 370 (footnote added).

■ In addressing the competing concerns of an equitable adoption allegation, we reasoned in *Singer* that "[w]hile formal adoption is the only safe route, in many instances a child will be raised by persons not his parents from an age of tender years, treated as a natural child, and represented to others as a natural or adopted child." 162 W.Va. at 508, 250 S.E.2d at 373.

> Our family centered society presumes that bonds of love and loyalty will prevail in the distribution of family wealth along family lines, and only by affirmative action, i.e., writing a will, may this presumption be overcome. An equitably adopted child in practical terms is as much a family member as a formally adopted child and should not be the subject of discrimination. He will be as loyal to his adoptive parents, take as faithful care of them in their old age, and provide them with as much financial and emotional support in their vicissitudes, as any natural or formally adopted child.

*Id.*

In discussing the proof necessary to establish equitable adoption, we noted as follows in *Singer:*

> We are unpersuaded that Glenell's absence from the list of heirs defeats her claim of equitable adoption.

---

1. These probate records consisted of appraisal forms completed following Mrs. Wilson's death, failing to list the Appellant as a beneficiary to Mrs. Wilson. The Appellant's counsel objected to the introduction of this appraisal form into evidence, and the lower court did not admit the document. However, the lower court did rely to some extent upon this document in making its determination, as evidenced by the following comments from the bench during the proceedings below:

    In addition, at the death of Margaret, when John was listing Margaret's heirs, he did not list Glenell as an heir of Margaret. So him not listing Glenell as an heir of Margaret, I assume he didn't consider her an heir of himself either, since he was the stepgrandparent and Margaret was the full grandparent by blood. . . .

2. We defined clear, cogent and convincing proof in *Singer* as follows:

    Clear, cogent and convincing proof of treatment as a "child" consistent with formal adoption is the highest possible standard of civil proof defined as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." *Cross v. Ledford,* 161 Ohio St. 469 at 477, 120 N.E.2d 118 at 123 (1954).

Circumstances which tend to show the existence of an equitable adoption include: the benefits of love and affection accruing to the adopting party, *Foster v. Cheek*, 212 Ga. 821, 96 S.E.2d 545 (1957); the performances of services by the child, *Lynn v. Hockaday*, 162 Mo. 111, 61 S.W. 885 (1901); the surrender of ties by the natural parent, *Chehak v. Battles*, 133 Iowa 107, 110 N.W. 330 (1907); the society, companionship and filial obedience of the child, *Oles v. Wilson*, 57 Colo. 246, 141 P. 489 (1914); an invalid or ineffectual adoption proceeding, *Benefield v. Faulkner*, 248 Ala. 615, 29 So.2d 1 (1947); reliance by the adopted person upon the existence of his adoptive status, *Adler v. Moran*, 549 S.W.2d 760 (Tex.Civ.App.1977); the representation to all the world that the child is a natural or adopted child, *In re Lamfrom's Estate*, 90 Ariz. 363, 368 P.2d 318 (1962); and the rearing of the child from an age of tender years by the adopting parents. *Lamfrom's Estate*, supra. Of course, evidence can be presented which tends to negate an equitable adoption such as failure of the child to perform the duties of an adopted child, *Fisher v. Davidson*, 271 Mo. 195, 195 S.W. 1024 (1917), or misconduct of the child or abandonment of the adoptive parents, *Winne v. Winne*, 166 N.Y. 263, 59 N.E. 832 (1901); however, mere mischievous behavior usually associated with being a child is not sufficient to disprove an equitable adoption. *Tuttle v. Winchell*, 104 Neb. 750, 178 N.W. 755 (1920).

*Id.* at 508–09, 250 S.E.2d at 373–74. See also *Kisamore v. Coakley*, 190 W.Va. 147, 437 S.E.2d 585 (1993).

In the case sub judice, the facts are virtually undisputed. Our review of the lower court's conclusion of law is de novo. We find that the Appellant has proven by clear, cogent, and convincing evidence, that she enjoyed a status within the decedent's home and family identical to that of a formally adopted child. Reviewing all facts available, we find that the decedent treated the Appellant with the degree of care, nurturing, and shelter enjoyed by a natural child. Ties were severed with her natural parents, and the decedent specifically declined the opportunity to release himself of the responsibility for the care of the Appellant subsequent to Mrs. Wilson's death. The evidence of the decedent's devotion to the Appellant and her reciprocation of such devotion is uncontradicted, and the record is replete with examples of the loving relationship between the two.

Consequently, we reverse the decision of the lower court and remand for entry of an order declaring that the Appellant had been equitably adopted by the decedent.

Reversed and Remanded with Directions.