533 A.2d 690

**Raymond C. McGARVEY, Jr.**

v.

**STATE of Maryland.**

**No. 88, Sept. Term, 1987.**

Court of Appeals of Maryland.

Nov. 27, 1987.

Price O. Gielen (Melnicove, Kaufman, Weiner, Smouse & Garbis, P.A., on the brief), Baltimore, for appellant.

Susan P. Whiteford, Sp. Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and James G. Klair, Asst. Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

We are asked to decide whether the doctrine of equitable adoption exists in Maryland, and if it does, whether its application should result in the reduction of inheritance taxes assessed against appellant, Raymond C. McGarvey, Jr. We shall assume that the doctrine exists in this State, but hold that it does not affect the rate of inheritance tax charged to an equitably adopted person.

Equitable adoption is sometimes called "adoption by estoppel," "virtual adoption," or "de facto adoption." By whatever name it is known, the doctrine in general involves the notion that if an individual who is legally competent to adopt a child enters into a contract to do so, and if the contract is supported by consideration in the form of part performance that falls short of completion of statutory adoption, then a court, applying equitable principles, may accord to the child the status of a formally adopted child for certain limited purposes.

That the factual basis for application of the doctrine exists in this case is not disputed. The parties have agreed that appellant McGarvey, in 1939, at the age of two, was placed by his parents in the custody of his paternal aunt, Helen McGarvey Saul. McGarvey's parents and Mrs. Saul agreed that the latter would adopt McGarvey as her son. As set forth in a Joint Statement of Facts (Appellant's Brief at App. 3):

> The natural parents completely bestowed upon Mrs. Saul all their natural rights and obligations pertaining to McGarvey. Mrs. Saul agreed to undertake and did, in fact, accept and carry out the obligations, duties, rights and privileges of raising McGarvey.... Mrs. Saul and McGarvey maintained the relationship of parent and child until the death of Mrs. Saul.

Unfortunately, however, although Mrs. Saul "regularly expressed her intent to formally adopt McGarvey," she never got around to performing that part of the contract. When she died, she had not formally adopted her nephew. She did, nevertheless, name him sole legatee under her will. The legacy was substantial; the Register of Wills for Montgomery County assessed a substantial inheritance tax. That assessment produced this case, for the tax was calculated at the 10 percent rate imposed on collaterals, and not at the 1 percent rate applicable to direct lineal descendants. Md.Code (1980 Repl.Vol., 1987 Cum.Supp.) Art. 81, §§ 150, 149. McGarvey, asserting that he was Mrs. Saul's equitably adopted son, sought a refund. The Register denied it.

The Tax Court upheld the Register, concluding that "the State of Maryland does not recognize the doctrine of ... equitable adoption." McGarvey was able to persuade the Circuit Court for Montgomery County (Messitte, J.) to the contrary, but that success availed him naught. Although Judge Messitte held that "[t]he doctrine of equitable adoption *is* recognized in this State," [emphasis in original], he went on to rule that it "does not apply where the decedent dies with a valid will, nor does it in any event entitle an equitably adopted child to taxation as a direct heir of the

decedent." McGarvey took his refund quest to the Court of Special Appeals; we granted *certiorari* before decision in that court.

## I. Maryland and Equitable Adoption

In Maryland, as in other American jurisdictions, adoption did not exist at common law; it is a creature of statute, having been brought into being in this State by Ch. 244, Acts of 1892. Strahorn, "Adoption in Maryland," 7 Md.L. Rev. 275 (1943). As a general rule, there is no method, other than the statutory procedure, by which a child can be adopted in this State. *Spencer v. Franks*, 173 Md. 73, 195 A. 306 (1937). Thus, Professor Strahorn wrote:

> Whether or not a private arrangement or agreement, entered into since the local statutory adoption procedure has been in force, will be given enforcement as a contract to adopt is a matter not yet passed on in Maryland adjudication. There is authority elsewhere in favor of the specific performance of such contracts....

7 Md.L.Rev. at 278 [footnote omitted]. Professor Strahorn, however, wrote that before our predecessors decided *Besche v. Murphy*, 190 Md. 539, 59 A.2d 499 (1948). That case, says McGarvey, shows that Maryland has recognized the doctrine of equitable adoption.[1]

In *Besche*, Stella Besche alleged facts that would have established an equitable or virtual adoption. She also al-

---

1. It seems that Professor Strahorn may not have read *Besche* so broadly. In a later piece, "Changes Made by the New Adoption Law," 10 Md.L.Rev. 20, 22 (1949), he wrote:
   > There is nothing novel in the [1947] revision statute with reference to the idea that adoption is purely statutory and has no common law basis. Thus it is, that the previous idea, that adoption can be had only in compliance with a statute, is carried forward.[11]

   In n. 11, discussing *Besche*, he explained "the case goes off on the principles of contract and equity law, although it does also concern the problem of imperfect adoption." On the other hand, Judge Messitte believed that *Besche* did recognize the doctrine; this is also the view of the author of the Annotation, *Modern Status of Law as to Equitable Adoption or Adoption by Estoppel*, 97 A.L.R.3d 347, 360 (1980).

leged that her purported adoptive mother had died testate. The will included a specific pecuniary bequest for Stella (as well as bequests for others) and a residuary clause giving all the rest and residue of the purported adoptive mother's estate to "those persons who under the laws of the State of Maryland would take in case of intestacy." *Id.* at 541, 59 A.2d at 500. Although Ms. Besche had never been formally adopted, she claimed under the residuary provision as an equitable adoptee, relying on *dictum* in *Clayton v. Heptasophs*, 130 Md. 31, 36–37, 99 A. 949, 951–952 (1917): "the authorities very generally establish the proposition, that a parol obligation by a person to adopt the child of another as his own, accompanied by the virtual though not statutory adoption, and acted upon by both parties during the obligor's life, may be enforced upon the death of the obligor, who dies without disposing of the property by his will. . . ."

Chief Judge Marbury, writing for the *Besche* court, said "[t]his dictum seems to be supported by the weight of authority in this country to the extent that the courts decree that a child so treated will be entitled to a right of inheritance from the estate of the foster parent such as a natural child would enjoy, where the child in question has faithfully and fully performed the duties of a natural child to the foster parents." 190 Md. at 546, 59 A.2d at 502–503. He then proceeded to a careful review of equitable adoption cases throughout the country, noting both the contractual performance and estoppel basis for various decisions, and that "the proof [in them] must be clear, cogent and convincing. . . ." *Id.* at 548–549, 59 A.2d at 504. He listed at least 16 jurisdictions as adopting the doctrine and only three as rejecting it.

This discussion may well suggest that the court looked with favor on the doctrine, at least to the extent that it would be applied to allow an equitably adopted child to take a distributive share of the equitably adoptive parent's estate on intestacy. But the court did not apply the doctrine in *Besche*. Intestacy was not involved; there was a will. Chief Judge Marbury reasoned:

It is, of course, within the power of a parent to disinherit his natural child, and if a claimed adoptive parent has made a will, leaving his property to others, there would be no practical basis upon which the one who claimed a right to be considered his adopted child, could ask the intervention of the court. He could not be declared an adopted child, as we have already shown, and he could not be given a share in an estate which had been left by will to others. *He is only entitled to be placed in the position he would have been in, had he been adopted,* and in that position, he would have inherited nothing.

*Id.* at 549–550, 59 A.2d at 504 [emphasis supplied]. This was because the residuary clause did not create an intestacy, but created a class of persons who would take as legatees and not under the intestacy statute. Because Ms. Besche was not one of those named in the statute, she could not take under the residuary clause. *Id.* at 552, 59 A.2d at 505.

From this language we can deduce that Maryland would likely look with favor upon the doctrine to the extent of permitting an equitably adopted child to take property from an equitably adoptive parent by intestate succession. In so doing, we would align ourselves with what appears to be some 27 other jurisdictions that apply the doctrine in those circumstances. Annotation, 97 A.L.R.3d at 359–365. The fairness of applying the doctrine in that context, once the prerequisite facts have been established by clear and convincing evidence, is apparent. And that application of the doctrine fits well within the traditional contractual and equitable estoppel notions that have been advanced to support it.

Thus, we are prepared to assume that Maryland does recognize the doctrine of equitable adoption, to the extent we have indicated. But, as we now explain, that will be of no benefit to McGarvey.

## II. Equitable Adoption and Inheritance Taxes

In 1917 (*Clayton*) and in 1948 (*Besche*), the Court was aware that there was widespread support for the doctrine of equitable adoption, at least in certain limited circumstances. As we have shown, that is still the case. But the agreement narrows considerably as we move beyond the subject of inheritance by an equitably adopted child from an equitably adoptive parent. Annotation, 97 A.L.R.3d at 354–355. Nevertheless, McGarvey would have us extend the doctrine far beyond the area of general agreement as identified in *Besche*.

McGarvey points to cases like *Foster v. Cheek*, 212 Ga. 821, 96 S.E.2d 545 (1957), in which the Supreme Court of Georgia applied the doctrine to allow an equitably adopted child to obtain insurance benefits provided for a "child." *Clayton, supra,* could be regarded as a case of this type, since it applied an estoppel theory to prevent an insurer from denying that the words "adopted child" did not include an equitably adopted child. He also cites *Bower v. Landa,* 78 Nev. 246, 371 P.2d 657 (1962), in which an equitably adopted child was treated as an heir in order to give him plaintiff status under a wrongful death statute. *Contra Limbaugh v. Woodall,* 121 Ga.App. 638, 175 S.E.2d 135 (1970). McGarvey places considerable reliance on cases such as *Williams v. Richardson,* 523 F.2d 999 (2d Cir.1975), *Broussard v. Weinberger,* 499 F.2d 969 (5th Cir.1974), and *Smith v. Secretary of Health, Educ. & Welfare,* 431 F.2d 1241 (5th Cir.1970). In each of them, a federal court recognized the doctrine of equitable adoption in order to allow recovery of certain social security benefits. The State, on the other hand, invokes cases such as *Sheffield v. Barry,* 153 Fla. 144, 14 So.2d 417 (1943), and *Collins v. Griffin,* 93 Ga.App. 282, 91 S.E.2d 369 (1956), which tend to limit the doctrine to intestacy or, at the most, insurance situations.

Many of these cases make it clear that use of the doctrine does not affect the actual status of the child. Thus, the *Foster* court pointed out that in Georgia, under the doctrine

of virtual adoption, "no relationship of parent and child is created, but it is only a court-given name to a status arising from and created by contract where one takes and agrees to legally adopt the child of another but fails to do so." 212 Ga. at 827–828, 96 S.E.2d at 549–550. *Accord Limbaugh,* 121 Ga.App. at 641, 175 S.E.2d at 138:

> The equitable principle of considering done what ought to have been done with regard to an unperformed contract to adopt has not, to our knowledge, ever been extended [in Georgia] beyond decreeing in the child a right to inheritance or a right to receive as a beneficiary under some types of insurance policies. The relation of parent and child does not arise from virtual adoption.

McGarvey importunes us to depart from this view and to hold that equitable doctrine does establish the same parent-child relationship that formal adoption creates. He correctly notes that West Virginia has done this. In *First Nat'l Bank in Fairmont v. Phillips,* 344 S.E.2d 201, 204 (W.Va. 1985), a divided court rejected "such machinations" as specific performance and estoppel, and read its earlier decision of *Wheeling Dollar Savings & Trust Co. v. Singer,* 162 W.Va. 502, 250 S.E.2d 369 (1978), as recognizing that an equitably adopted child occupies the identical status as a formally adopted child; that is, in West Virginia, legal adoption may be achieved either by equitable adoption or formal judicial adoption.

■ We do not, of course, have before us a question of insurance benefits or of who may sue as a plaintiff in a wrongful death action. We need not decide whether we would apply the doctrine in that sort of case. But we are surely not prepared to go as far as West Virginia has gone. Adoption is an important matter, not only from the viewpoint of property concerns, such as inheritance, but from the perspective of personal relationships. By enacting the adoption statute now codified at Md.Code (1984, 1987 Cum. Supp.) §§ 5–301 through 5–330 of the Family Law Article, our legislature has made it plain that as a matter of general policy, termination of natural parental rights and the cre-

ation of a wholly new parent-child relationship may be accomplished only by following elaborate and carefully devised statutory procedures, and that these results may be achieved only by formal court decree. Our predecessors said as much in *Besche:* "[T]here was then [prior to the 1892 enactment of the first adoption statute], and is now, no other method by which a child can be adopted in this State." 190 Md. at 544, 59 A.2d at 502.

McGarvey, then, cannot prevail by way of the argument that his equitable adoption has cloaked him in the mantle of a formally or legally adopted child, and that for this reason, he should be treated as a direct descendant for inheritance tax purposes. Nor can he successfully invoke arguments based on contract performance or equitable estoppel. The State, in its tax-collecting capacity, is not a party to any contract to adopt McGarvey; the State did or failed to do nothing with respect to adoption upon which McGarvey could have relied to his detriment. In the last analysis, his plea to be so treated comes down to a question of statutory construction.

The social security cases, *Williams, Broussard,* and *Smith,* all *supra,* also turned on statutory construction. In each of them, the word "child" and the phrase "legally adopted child" was read to include an equitably adopted child, in order to permit the receipt of certain benefits. This construction was thought to embody the intent of Congress, in view of the remedial purposes of the Social Security Act. *See, e.g., Williams,* 523 F.2d at 1003, and *Broussard,* 499 F.2d at 970.

Maryland tax law does not have the same remedial purposes as the Social Security Act; its aim is to raise revenue, not to distribute benefits to the needy. That law, Art. 81, § 149(a), levies "a tax at the rate of one per centum on every one hundred dollars of the clear value of any and all property, having a taxable situs in this State, passing at the death of any ... decedent ... to or for the use of the [*inter alia* ] children ... of such decedent...." Section 150(a) imposes a ten per centum tax on property so passing to

"any person or persons other than the [*inter alia* ] children ... of such decedent...." The General Assembly did not, in the inheritance tax laws, define the word "children." But the adoptions statute itself suggests that in this context we should look to the Estates and Trusts Article. *See* Family Law Art. § 5–308(b)(3).

Md.Code (1974) § 1–207(a) of the Estates and Trusts Article provides:

> An adopted child shall be treated as a natural child of his adopting parent or parents. On adoption, a child no longer shall be considered a child of either natural parent, except that upon adoption by the spouse of a natural parent, the child shall still be considered the child of that natural parent.

This language clearly refers to the formal adoption process, since it is only by that process that "a child no longer shall be considered a child of either natural parent." *See* Family Law Art. § 5–308(b). *See also* Estates and Trusts Art. § 1–205: "A child includes ... an adopted child...." While earlier statutes spoke in terms of "a legally adopted child," see former Art. 93, §§ 142 (1951) and 147 (1964), we do not think the subsequent elimination of the adverb "legally" effected any substantive change. *See, e.g., Lyman v. Sullivan,* 147 Conn. 134, 137–139, 157 A.2d 759, 761 (1960). The elimination of the adverb occurred during code revision. It is well established that a language change effected during the course of formal code revision accomplishes no substantive change absent the clearest legislative intent. *Bureau of Mines v. George's Creek,* 272 Md. 143, 155, 321 A.2d 748, 754–755 (1974).

Thus, reading together the adoption statute, the estates and trusts law, and the inheritance tax law, we conclude that when the legislature wrote "children" in Art. 81, §§ 149(a) and 150(a), it meant formally adopted children. McGarvey reads *Estate of Radovich,* 48 Cal.2d 116, 308 P.2d 14 (1957), and *Estate of Reid,* 80 Cal.App.3d 185, 145 Cal.Rptr. 451 (1978), as supporting a contrary result, but we do not find those cases helpful. In *Radovich,* a California

probate court had decreed that an equitably adopted child was the adopted son and heir of the decedent. The Supreme Court of California held that the probate court had made an *in rem* determination of status which was final and binding on all the world, including the tax collector. Accordingly, under settled principles of *res judicata*, that official had to assess inheritance taxes at the rate applicable to property passing to adopted children. *Reid* simply followed *Radovich.* In the case before us, we have no final and binding determination by any court that McGarvey occupies, for all purposes, the status of Mrs. Saul's adopted son.

More closely on point, we think, are cases like *Lyman, supra; Wooster v. Iowa State Tax Comm'n,* 230 Iowa 797, 298 N.W. 922 (1941); *In re Clark's Estate,* 105 Mont. 401, 74 P.2d 401 (1937); and *Goldberg v. Robertson,* 615 S.W.2d 59 (Mo.1981). In each of these cases, the holding is that equitable adoption is not enough to give an individual status as an adopted child for the purpose of favorable inheritance tax treatment; instead, formal adoption is required to achieve that result. *See also First Nat'l Bank of Denver v. People,* 183 Colo. 320, 324, 516 P.2d 639, 641 (1973). That is our holding as well.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.