267 N.J. Super. 88 (1993)
630 A.2d 835
IN THE MATTER OF THE ADOPTION OF A CHILD BY N.E.Y.
Superior Court of New Jersey, Chancery Division, Union County, Family Part.
Decided April 13, 1993.
*89 Steven I. Sklar, for petitioner N.E.Y.
WHITKEN, J.S.C.
This matter involves an issue not yet decided by the courts of New Jersey as to whether an adoption can be finalized when the potential adoptive parent has died subsequent to the preliminary court hearing but prior to the final hearing required for a private placement adoption. For the reasons expressed hereafter I find that there is no authority for such adoption under New Jersey Law and therefore the adoption cannot be granted.

STATEMENT OF FACTS
On January 22, 1992, N.E.Y. filed a complaint for the adoption of a minor child with this court indicating she was forty-two years of age and a widow. The child she sought to adopt was a female *90 infant, born November 26, 1991, in Southampton, New York, and was under her continuous care since December 3, 1991.
The plaintiff's good friends, C.M. and S.M., had agreed to conceive a child for the plaintiff to thereafter adopt and, in fact, the infant was conceived by C.M., and during her pregnancy all parties considered the baby she carried to be the child of the plaintiff.
Subsequent to the birth of the child she was cared for by her biological parents until December 3, 1991, when she was surrendered to the plaintiff at her New Jersey home.
Since this was a private placement adoption, a preliminary hearing was held on April 16, 1992, pursuant to N.J.S.A. 9:3-48, at which time this court took testimony and reviewed the favorable report of Children Of The World. This court then entered an order on April 16, 1992, terminating the parental rights of the natural mother and father of the infant child and declaring the child potentially fit for adoption, at which time a final hearing was scheduled for Thursday, October 22, 1992. This court's order further appointed Children Of The World, Inc., as the next friend and indicated that the child shall hereafter be known as J.M.M.[1], except that her birth certificate was not to be amended until the final judgment was entered, and further providing that the plaintiff could act in her own name in providing for the health and education of the child and directing that the plaintiff was not to remove the child from this state other than for vacations and temporary visits except on order of the court.
Unfortunately, N.E.Y. died on September 11, 1992, due to a recurrence of cancer.
This court has been advised that N.E.Y. named the child's biological parents as her guardian and also named the child as the sole beneficiary under her last will and testament. Counsel for *91 N.E.Y. has represented to the court that the inheritance that the child will receive from N.E.Y. pursuant to her last will and testament is in the approximate sum of $300,000.00.
A motion was thereafter filed on behalf of N.E.Y. requesting that this court enter an order finalizing the adoption and awarding custody of the child to S.M. and C.M., her biological parents and the guardians designated under the last will and testament of N.E.Y.
In support of that motion, a certification has been submitted by the attorney for the plaintiff, indicating that the child was considered to be that of the plaintiff by the biological parents from the moment of conception, that Children Of The World was appointed to conduct the adoption investigation and they approved the adoption, and the child was conceived with the knowledge by all parties that the plaintiff had cancer but that it was in remission at the time of the preliminary hearing.
The certification further states that the parties planned that should there be a recurrence of the plaintiff's cancer resulting in her death, the biological parents would be named as guardians under the plaintiff's will.
The certification of the attorney indicates that the plaintiff died prior to the finalization of the adoption but it is clear that had she survived, the adoption would have been finalized. The certification further argues that the finalization of the adoption is in the best interest of the child and indicates that since the child is the sole beneficiary under the last will and testament of the plaintiff, should the adoption be approved, the child will receive the estate free of inheritance taxes, be entitled to social security survivorship benefits, and that adoption will also provide a simple vehicle to return the child to her biological parents who have physical custody at this time. The certification of the attorney further indicates that although N.E.Y. was a widow at the time of the birth, the last name has great meaning to her deceased husband's parents, who are Japanese.
*92 A certification of the biological parents indicates clearly that they conceived the child at the request of the plaintiff, their dear friend, and considered the child to be hers from the moment of conception. It further indicates that it would be in the best interest of the child that the adoption be finalized and that the child be declared to legally be N.E.Y.'s daughter; that the infant is the sole legatee under the last will and testament of N.E.Y. and if she becomes N.E.Y.'s child the estate would not be reduced by inheritance taxes, and, more importantly, that the child would be entitled to social security survivorship benefits. They further request that if the adoption is finalized they be given custody of the child and be declared the designated guardians pursuant to the will.
A certification of G.Y. indicates he is the Executor of the estate of N.E.Y., the plaintiff, who died on September 11, 1992; that the placement was made by the biological parents with the knowledge that the decedent had breast cancer, but it was in remission and the prognosis was good; and that, in fact, being aware of the uncertainties of life, the decedent executed a will leaving her estate to her "daughter," the child sought to be adopted, and appointing the birth parents as guardians of the child in the event of her death.
As a representative of the estate of the plaintiff, the executor asks that the court finalize the adoption and declare the child the daughter of the decedent, which would give legal effect to what was the reality of the situation and it would be in the best interests of the child in that she would inherit free of inheritance tax and be entitled to social security survivorship benefits.
Finally, attached to the certifications is a letter dated November 27, 1992, from Children Of The World recognizing that the plaintiff has died and indicating that they had completed a thorough Adoption Court Investigation (ACI) and had found the plaintiff to be a fit parent, and they understand that the reason for having the adoption completed is because of the social security survivorship benefits and other benefits that will inure to the benefit of the *93 child, including a relationship with the parents of the decedent, and they also support the request in the decedent's will to return the child to her birth parents.

LAW
As indicated in In re Holibaugh, 18 N.J. 229, 113 A.2d 654 (1955), adoption was known to the ancient Greeks and Romans but the right of adoption was unknown to the common law of England. Thus, in this country the right of adoption and the consequences flowing therefrom are of statutory origin. See In re Adoption of A, 118 N.J. Super. 180, 286 A.2d 751 (Cty.Ct. 1972).
As stated in In re Adoption of a Child by I.T., 162 N.J. Super. 587, 596, 394 A.2d 120 (Cty.Ct.), rev'd on other grounds, 164 N.J. Super. 476, 397 A.2d 341 (App.Div. 1978), "The right of adoption exists solely by statute to which the courts exact strict compliance."
The New Jersey Statutes regarding adoption have undergone a number of changes and dramatic revisions throughout the years. N.J.S.A. 9:3-37 provides that the adoption statutes shall be liberally construed to the end that the best interests of children be promoted and that due regard shall be given to the rights of all persons affected by an adoption.
N.J.S.A. 9:3-43 indicates who may institute an action for adoption by stating:
a. Any person may institute an action for adoption, provided, however, that a married person may do so only with the written consent of his spouse or jointly with his spouse in the same action or having lived separate and apart from his spouse for a continuous period of at least 18 months.
b. Each plaintiff, at the time of the institution of the action, shall have attained the age of 18 years and shall be at least 10 years older than the child to be adopted provided, however, that the court for good cause may waive either requirement, such waiver to be recited in any judgment of adoption thereafter entered.
It is clear that the statute does not provide for the adoption by a decedent or the estate of the decedent.
*94 N.J.S.A. 9:3-48 sets forth the procedure to be followed for an adoption where the child involved has not been received from an approved agency, which is the case in this matter. The statute provides that the prospective parent shall file the complaint for adoption with the court, after which the court shall enter an order declaring the child a ward of the court and give custody to the plaintiff subject to the further order of the court. The court is then to appoint an approved agency to conduct an investigation and submit a report to the court regarding the facts and circumstances surrounding the surrender of custody by the child's parents and the placement of the child in the home of the plaintiff together with an evaluation of the child and the plaintiff and spouse of the plaintiff if not the child's parent and if not a party to the action. Thereafter the court is to fix a date for a preliminary hearing not less than two months or more than three months from the date the complaint is filed, which hearing may be accelerated upon the application of the approved agency and upon notice to the plaintiff where the agency determines that removal of the child from the plaintiff's home is required, at which point the court is obligated to appoint a guardian ad litem to represent the child at all future proceedings regarding the adoption.
The preliminary hearing is then conducted in camera for the court to determine the circumstances under which the child was relinquished by his or her parents and received into the home of the plaintiff, the status of the parental rights of the parents, the fitness of the child for adoption and the fitness of the plaintiff to adopt the child and provide a suitable home.
The statute goes on to indicate in section c. that if upon completion of the preliminary hearing the court is satisfied that the plaintiff is fit to adopt the child and parental rights have been properly terminated:
it shall issue an order stating its findings, declaring that no parent or guardian of the child has any right to custody or guardianship of the child, terminating the parental rights of such person, fixing a date for final hearing not less than 6 nor more than 9 months from the date of the preliminary hearing and appointing *95 an approved agency to evaluate the placement in accordance with subsection d. (Emphasis added)
Paragraph e. goes on to state:
At the final hearing the court shall proceed in camera; provided, however, that if the approved agency in its report pursuant to subsection d. has recommended that the adoption be granted, the final hearing may be dispensed with and, if the court is satisfied that the best interests of the child would be promoted by the adoption, a judgment of adoption may be entered forthwith.
The appearance of the approved agency at the final hearing shall not be required unless its recommendations are adverse to the plaintiff or unless ordered by the court.
Thereafter in paragraph f. the pertinent portion states:
If, based upon the report and the evidence presented, the court is satisfied that the best interests of the child would be promoted by the adoption, the court shall enter a judgment of adoption.
It is the position on behalf of the estate of the plaintiff in this matter that if not for the death of the plaintiff, without any further appearance being required, the adoption would have been finalized on October 22, 1992, and it is thus contended that this court should, in fact, grant the final order of adoption.
As has been previously stated, the right of adoption exists solely by statute, and there is no New Jersey statute or legal authority to permit an adoption where the prospective adoptive parent is deceased. As properly pointed out by the attorney for the plaintiff, the best interest of the child is the paramount test in the highly sensitive area of adoption. In re Adoption of a Child by I.T., supra 164 N.J. Super. at 476, 397 A.2d 341. It is contended that permitting the adoption is in the best interest of the child in this case since if the adoption is in fact granted, the child, who is the sole beneficiary under the last will and testament of the decedent, will receive the estate free of New Jersey Transfer Inheritance Taxes and will also be entitled to Social Security survivorship benefits. Counsel for the plaintiff has offered the theory of "equitable adoption" as the vehicle to permit the court to grant the final adoption. Although New Jersey has not recognized "equitable adoption" in any case that research has disclosed, the State of New York does, in fact, recognize such a principle. *96 In Rodriguez v. Morris, 136 Misc.2d 103, 519 N.Y.S.2d 451 (Surr.Ct. 1987), the surrogate's court of Suffolk County indicated:
Equitable Adoption is a doctrine of law that is recognized in this State (Middleworth v. Ordway, 191 N.Y. 404, 84 N.E. 291). In the Middleworth case, the Court of Appeals held that absent a formal adoption, where a decedent dies intestate and prior to his demise he had entered into an agreement with a child's natural parents or with an agency or institution having the care and custody of the child (Gavin v. Aitken, 258 N.Y. 595, 180 N.E. 348; Miller v. Elliott, 266 App.Div. 428, 42 N.Y.S.2d 569), wherein the decedent agreed to adopt the child and to treat that child as he would treat a natural child of his, and the natural parents or the agency or institution as well as the child perform their part of the contract, to wit, a parent-child relationship is formed and carried on with the decedent, the child may inherit the share of the decedent's intestate estate that he would have been entitled to had he been formally adopted. This doctrine does not create a legal adoption by the decedent of the child, but is merely an exercise of the court's equitable powers whereby a child is permitted to enforce the agreement to adopt made by the decedent and thereby acquire the rights in intestacy that he would have had if the decedent had complied with the said agreement. (Matter of Mazzeo, 95 A.D.2d 91, 466 N.Y.S.2d 759; Matter of Riggs, 109 Misc.2d 644, 440 N.Y.S.2d 450). (Emphasis added)

[Id. 519 N.Y.S.2d at 453.]
It is important to note that the court makes it very clear in Rodriguez that even an equitable adoption theory does not create a legal adoption by the decedent of the child but merely permits the child to acquire the rights of intestacy that the child would have had if the adoption had taken place. Plaintiff in the matter before this court seeks a "legal adoption" which even those jurisdictions that recognize "equitable adoption" do not permit.
The doctrine of equitable adoption or adoption by estoppel in situations involving an intestacy is recognized by a number of jurisdictions in addition to New York but as previously stated, not by New Jersey. In Arizona the courts in In re Lamfrom's Estate v. Lockard, 90 Ariz. 363, 368 P.2d 318 (1962), and Re Estate of Prewitt v. Jones, 17 Ariz. App. 396, 498 P.2d 470 (1972), have applied the doctrine of "equitable adoption" only in the situation where a child seeks to inherit from the estate of a person who had previously entered into a contract of adoption with the child's natural parents and that, except for statutory formalities, was fully performed during the decedent's lifetime.
*97 In Herrera v. Glau, 772 P.2d 682 (Colo.Ct.App. 1989), eighteen and twenty year old step-brothers of a decedent who had equitably adopted them brought a wrongful death action seeking to recover under the Colorado Death Statute contending they were heirs of the decedent.
The Colorado Court of Appeals held that equitably adopted children were not "heirs" for purposes of the Wrongful Death Statute and were not entitled to maintain actions thereunder. The court stated:
The doctrine of equitable adoption was first recognized in Barlow v. Barlow, 170 Colo. 465, 463 P.2d 305 (1969). There the court found an equitable adoption existed if there was "an oral contract to adopt a child, fully performed except that there was no statutory adoption, and in which the rule is applied for the benefit of the child in the determination of heirship upon the death of the person contracting to adopt." Colorado courts have consistently refused to apply the doctrine of equitable adoption to factual situations other than those involving succession to an estate. Chavez v. Shea, 185 Colo. 400, 525 P.2d 1148 (1974).
The effects of adult adoptions and equitable adoptions are identical. In both, no change of name occurs, nor is notice to the adoptee's natural parents required. Neither adoption imposes any duties on the adoptee toward the adopting parent, nor does it imposes any responsibilities upon the adopting parent. The sole effect of both adoption of an adult and equitable adoption is to allow the adoptee to participate in succession to an estate.

[Id. at 684.]
The Florida courts in Kupec v. Cooper, 593 So.2d 1176 (Dist.Ct. App. 1992), held that the doctrine of equitable adoption would not affect a child's rights against the intestate estate of his natural father, but only his rights against the intestate estate of his stepfather. The Florida court stated:
Equitable adoption is established when it is shown that the decedent agreed to adopt the child, the natural parent acted in reliance, and the child was treated as the child of the decedent, but there is no legal adoption. Sheffield v. Barry, 153 Fla. 144, 14 So.2d, 417 (1943). This doctrine is applied in an intestate estate to give effect to the intent of the decedent to adopt and provide for the child. If no legal adoption occurred and Wasyl Kupec were to die intestate, Walter could use the theory of equitable adoption to inherit a share of his estate. However, application of this doctrine does not change his status to that of a legally adopted child. In Re Estate of Wall, 502 So.2d 531 (Fla. 4th DCA 1987). Equitable adoption could only affect his rights against the intestate estate of Wasyl Kupec. It does not affect his rights against the intestate estate of his natural father....

*98 [Id. at 1177.]
Of particular significance is the holding of the Maryland Courts in McGarvey v. Maryland, 311 Md. 233, 533 A.2d 690 (1987), where the Court of Appeals held that an equitably adopted child was not entitled to the status of a formally adopted child for purposes of favorable inheritance tax treatment. The facts were that Raymond C. McGarvey, Jr., in 1939, when he was two years old, was placed by his parents in the custody of his paternal aunt, Helen McGarvey Saul. It was agreed between McGarvey's parents and his aunt, Mrs. Saul, that the aunt would adopt McGarvey as her son. The natural parents bestowed upon Mrs. Saul all of their natural rights and obligations pertaining to Raymond and Mrs. Saul agreed to undertake and did, in fact, accept and carry out all of the obligations, duties, rights and privileges of raising Raymond. Mrs. Saul and Raymond, in fact, maintained a parent-child relationship until Mrs. Saul passed away. Unfortunately, although apparently Mrs. Saul regularly expressed her intent to formally adopt Raymond, this never, in fact, occurred. Upon her death, she had not yet formally adopted her nephew although she did name him as the sole legatee under her will. Apparently the legacy was quite substantial and a large inheritance tax was assessed. The tax was calculated at a 10% rate and not at a 1% rate which would have occurred if Raymond had been a direct lineal decedent of Mrs. Saul.[2] Raymond McGarvey then asserted that he was Mrs. Saul's equitably adopted son and sought a refund, which was denied. The tax court upheld the Register finding that "the State of Maryland does not recognize the doctrine of equitable adoption." Thereafter, the Circuit Court of Montgomery County held that "equitable adoption" was recognized in Maryland but found that it does not apply where the decedent dies with a valid will, nor does it entitle an equitably adopted child to taxation as a direct heir of the decedent.
*99 The court in McGarvey points to several cases where Federal Courts have recognized the doctrine of equitable adoption in order to allow recovery of certain social security benefits. In that regard, reference is made to the cases of Williams v. Richardson, 523 F.2d 999 (2d Cir.1975), Broussard v. Weinberger, 499 F.2d 969 (5th Cir.1974), and Smith v. Secretary of Health, Educ. & Welfare, 431 F.2d 1241 (5th Cir.1970).[3]
In denying McGarvey the relief sought by him, the court states:
Adoption is an important matter, not only from the viewpoint of property concerns, such as inheritance, from the perspective of personal relationships. By enacting the adoption statute now codified at Md.Code (1984, 1987 Cum.Supp.) ss 5-301 through 5-330 of the Family Law Article, our Legislature has made it plain that as a matter of general policy, termination of natural parental rights and the creation of a wholly new parent-child relationship may be accomplished only by following elaborate and carefully devised statutory procedures, and that these results may be achieved only by formal court decree.

[533 A.2d at 694.]
The court goes on to hold that the state in its tax collecting capacity is not a party to any contract to adopt McGarvey, the state did, or failed to do, nothing with respect to adoption upon which McGarvey could have relied to his detriment and ultimately it was argued that his plea to be so treated comes down to a question of statutory construction as the court found is what the social security cases of Williams, Broussard, and Smith turned on.
In any event, in this matter the child will, in fact, inherit from the plaintiff since the plaintiff did not die intestate but, in fact, designated the child as the beneficiary under her Last Will and Testament.
*100 In Matter of Estate of Mazzeo, 95 A.D.2d 91, 466 N.Y.S.2d 759 (1983), which was a case brought by the stepson of Rose Mazzeo, who filed a petition for adoption by his stepmother, the petitioner argued that under New York law in adult adoptions the court was not permitted to refuse to sign an adoption order once the requirements of Section 115 of the Domestic Relations Law were complied with since the "best interests standard" usually applied by the court in determining whether to sign an adoption order is inapplicable to adult adoptions and that the Surrogate's Act is merely ministerial. In dealing with this argument, the court stated:
While we concur that adult adoptions may be dealt with more liberally than child adoptions, no adoption may take place except as provided for in article 7 of the Domestic Relations law. Adoption is in derogation of the common law and strict construction of the adoption statutes is generally required (12B Zett-Edmonds-Buttrey-Kaufman, N.Y.Civ.Prac., § 39.01[3]; see, e.g. Dennis T. v. Joseph C., 82 A.D.2d 125, 128-129, 441 N.Y.S.2d 476, app. dsmd. 54 N.Y.2d 1024, 446 N.Y.S.2d 1027, 430 N.E.2d 1322). The signing of a final order of adoption is not merely a ministerial act. An adoption is not legally effective unless an order of adoption has been signed (see Matter of Landon v. Motorola, Inc., 38 A.D.2d 18, 326 N.Y.S.2d 960).... (Emphasis added)

[Id. 466 N.Y.S.2d at 761.]
In In re the Adoption of P., an Adult, 193 N.J. Super. 33, 471 A.2d 1220 (Probate Ct. 1983), an unmarried twenty-nine-year-old male sought to adopt his nineteen-year-old unmarried male first cousin. The plaintiff was an assistant professor of economics at a local university and his cousin, who he proposed to adopt, was a Greek National residing in the United States on a student visa. He was a full time student at the university where the plaintiff taught and he resided in the school dormitory. If the action for adoption was approved, the proposed adoptee would have moved out of the dormitory and into the plaintiff's apartment.
The court determined that the two young men were very close to each other and the natural parents of the adoptee had given their consent to the proposed adoption in writing.
*101 The court found, however, that the primary reason for the adoption was to obtain a tuition-free college education for the adoptee, a privilege allowed to children of university faculty members such as the plaintiff.
In determining that an adoption was not appropriate even though the plaintiff had satisfied the statutory requirements of age and character, the court held:
However, the court finds that the only advantage or benefit to the prospective adoptee is the economic privileges that he would gain at the university by virtue of being a professor's son. Strictly and narrowly construed, this is a benefit to the person to be adopted and the statutory requirements appear to be fulfilled. However, this court finds that the use of the adoption process by plaintiff and the adoptee profanes the Legislative intent. The adoption statute must be construed to allow discretion in the court to deny an adoption which has as its primary purpose financial gain at the expense of an innocent third party. See In re Adoption of A, 118 N.J. Super. 180 [286 A.2d 751] (Cty.Ct. 1972). The statute is concerned with the relation, status and legal effect of adoption, all of which bear on the essential public interest as well as individual rights.

[Id. 193 N.J. Super. at 36, 471 A.2d 1220.]
The court goes on to state:
In construing the statute, the court cannot ignore the public interest and the effect that the adoption would have on third parties.

[Id. at 37, 471 A.2d 1220.]
While this court does not find that the purpose of this adoption is in any degree similar to that in In re Adoption of P., I find that where at this point the primary benefit to the infant child would be the savings of New Jersey Transfer Inheritance Taxes and the certainty of receiving Social Security benefits, it would be improper for this court, in the absence of statutory authority, to permit this adoption.
It is interesting to note that no one appears in opposition to this application, although an argument could conceivably be made that the Attorney General of the State of New Jersey should be given the right to present his position since the granting of the adoption would affect the New Jersey Transfer Inheritance Taxes due on the estate inherited by the infant. Since, however, it is the *102 position of this court that there is no authority by either statute or case law to grant the adoption, the failure to give such notice is rendered moot.
For the reasons set forth herein, the motion of the plaintiff to finalize the adoption is denied.
The attorney for the plaintiff is directed to submit an order in accordance with this decision.
NOTES
[1] The order presented for signature indicated that the child's name shall hereafter be known as J.M.M. although the complaint sought that the name of the child would be J.M.Y. upon adoption.
[2] Pursuant to N.J.S.A. 54:34-2, the New Jersey Transfer Inheritance Tax will be 15% for the child seeking to be adopted in the present case if there is no adoption as opposed to no tax whatsoever if the adoption is permitted.
[3] A review of these cases indicates that in determining whether "a child" is entitled to Disability Insurance Benefits pursuant to 42 U.S.C.A. § 402(d)(1) the Secretary of Health is to apply such law as would be applied in determining the devolution of intestate personal property by the courts of the state in which the individual is domiciled at the time an application is filed.