709 A.2d 1381

IN THE MATTER OF THE ADOPTION OF BABY T.

Superior Court of New Jersey
Appellate Division

Submitted March 25, 1998—Decided May 29, 1998.

Shebell, P.J.A.D., dissented and filed opinion.

Before Judges SHEBELL, D'ANNUNZIO and RODRIGUEZ.

*Dughi and Hewit,* attorneys for appellant, Nishat Zedie, M.D. (*Marie Judith McCormack* and *Gary L. Riveles,* on the brief).

*Blume, Goldfaden, Berkowitz, Donnelly, Fried & Forte,* attorneys for respondents P. and J.H. (*David M. Fried,* on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

Nishat Zedie, M.D., a defendant in a medical malpractice wrongful death and survivorship action, appeals from an order denying her application to set aside a judgment of adoption. Decedent was the adopted child and the judgment of adoption was entered after his death.

The facts are uncontroverted. The child, Baby T, a boy, was born on December 1, 1993. P. and J.H. received Baby T into their household three days later for the purpose of adoption. They received him from The Adoption Agency (agency). The agency remained the child's guardian, and under the adoption statute in effect prior to April 27, 1994, P. and J.H. could not commence an adoption proceeding for at least six months. *N.J.S.A.* 9:3–47a.[1]

Baby T was admitted to a hospital on March 31, 1994 for the repair of an inguinal hernia. He suffered cardiac arrest during the procedure and died a few hours later.

P.H. qualified as Baby T's administrator and in March, 1995 commenced a wrongful death and survivorship action alleging malpractice against several defendants, including Dr. Zedie. Venue was set in Middlesex County. Thereafter, on May 25, 1995 P. and J.H. filed an adoption complaint in Camden County. A judgment of adoption was entered on July 7, 1995. The judgment

---

[1] *L.* 1993, c 345, § 10, effective April 27, 1994, permits the earlier filing of a complaint if the agency consents. But an adoption cannot be "finalized" unless the child has been in the adoptive parent's home for at least six months.

of adoption effected the adoption of two children, the decedent, Baby T, referred to therein as Baby Boy Doe, and another boy referred to as Baby Boy Roe.

Dr. Zedie moved in the medical malpractice action for an order setting aside the adoption judgment. Judge Lintner heard the motion on June 27, 1997 and informed defense counsel that the defendant would have to move within the adoption proceeding to set aside the judgment. During colloquy, plaintiffs' counsel conceded that Dr. Zedie would have standing in the adoption proceeding to make the motion.

Dr. Zedie made the motion in the adoption proceeding in Camden County and it was denied based on a comprehensive and thoughtful published opinion. *In re Adoption of Baby T.*, 308 *N.J.Super.* 344, 705 *A.*2d 1279 (Ch.Div.1997) (hereinafter *Baby T* ). Dr. Zedie now appeals.

■ Despite counsel's earlier concession that Dr. Zedie had standing to attack the adoption judgment, P. and J.H. contended in the Family Part and contend on appeal that Dr. Zedie lacked standing. The trial court questioned Dr. Zedie's standing, but addressed the substantive issue. *Id.* at 348–49, 705 *A.*2d 1279. We conclude that Dr. Zedie has standing to attack the adoption judgment.

If a decedent dies intestate, a wrongful death action must be brought in the name of an administrator *ad prosequendum.* *N.J.S.A.* 2A:31–2. The amount recovered, however, is for the "exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and in the proportions to which they are entitled to take the same." *N.J.S.A.* 2A:31–4. *See Sykes v. Propane Power Corp.*, 224 *N.J.Super.* 686, 697, 541 *A.*2d 271 (App.Div.1988) (finding that unmarried cohabitant of decedent who bore decedent four children has no individual claim under the Wrongful Death Act).

The amount of damages in a wrongful death action generally is measured by the pecuniary loss suffered by decedent's heirs. Regarding the death of a child, our Supreme Court explained:

> Damages for the wrongful death of an infant, like wrongful-death damages generally, are limited to economic matters. When parents sue for the wrongful death of a child, their damages may include the pecuniary value of the child's help with household chores, the pecuniary value of the child's anticipated financial contributions, and the pecuniary value of the child's companionship, including his or her advice and guidance, as the parents grow older.
>
> [*Carey v. Lovett*, 132 *N.J.* 44, 67, 622 *A.*2d 1279 (1993).]

See *Thalman v. Owens–Corning Fiberglas*, 290 *N.J.Super.* 676, 683, 676 *A.*2d 611 (1996) (holding that in wrongful death action "only pecuniary losses may be recovered ... by the intestate beneficiaries. Dependent intestate beneficiaries take to the exclusion [of] non-dependent beneficiaries.... The loss is measured by the beneficiaries' reasonable expectations of pecuniary advantage from the continuance of the life of the deceased.").

Thus, identification of decedent's heirs and their pecuniary loss is central to the damage claims in the malpractice action. It is inferable from the timing of the adoption complaint, filed fourteen months after the child's death and within three months of the filing of the malpractice complaint, that the adoption was intended, at least in part, to provide a legal foundation for the malpractice action. As a defendant in the malpractice action, Dr. Zedie has a stake in the validity of the adoption judgment and her interest establishes a "genuine adverseness" between her and the adoptive parents. *New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n*, 82 *N.J.* 57, 68, 411 *A.*2d 168 (1980) (noting that to demonstrate standing, plaintiffs must show they have a "stake in the outcome of [the] proceedings and there is genuine adverseness between the parties in terms of the litigated controversy"); *In re Howell Tp., Monmouth County*, 254 *N.J.Super.* 411, 416, 603 *A.*2d 959 (App.Div.) (stating that "standing" requires that a litigant have a "sufficient stake and real adverseness with respect to the subject matter of the litigation, and a substantial likelihood that some harm will fall upon it in the

event of an unfavorable decision"), *certif. denied,* 127 *N.J.* 548, 606 *A.*2d 362 (1991).

In denying Dr. Zedie's motion to vacate the adoption judgment, the motion judge, relying on *Stellmah v. Hunterdon Coop. G.L.F. Serv., Inc.,* 47 *N.J.* 163, 219 *A.*2d 616 (1966), held that an adoption judgment entered after the death of one of the parties is valid. *Baby T, supra,* 308 *N.J.Super.* at 356–57, 705 *A.*2d 1279. Alternatively, the motion judge ruled that the facts established an equitable adoption. *Id.* at 358–59, 705 *A.*2d 1279.

The motion judge overread *Stellmah,* which involved the death of Frank M. Stellmah, Sr. in an accident arising out of and in the course of his employment. The issue was whether three year old Frank, Jr. was entitled to benefits under the Workers' Compensation statute as decedent's "dependent." *Id.* at 166–67, 219 *A.*2d 616. The statute provided for dependency benefits for "[l]egally adopted children...." Frank, Jr. was not the biological child of decedent or decedent's wife. He had been born in Montreal, Canada. *Id.* at 167, 219 *A.*2d 616. Frank, Jr. was placed with Mr. and Mrs. Stellmah by a Montreal adoption agency, and the Stellmahs had executed an affidavit under the law of the Province of Quebec agreeing to accept custody of and to support Frank, Jr. "in view of a future legal adoption." *Ibid.* The judgment of adoption was entered in the Quebec court approximately ten weeks after Frank, Sr's death. *Id.* at 168, 219 *A.*2d 616.

The Supreme Court held that Frank, Jr. was entitled to dependency benefits because "*under Quebec law* Frank M. Stellmah, Jr. had acquired the status of an adopted child of Frank M. Stellmah, Sr. as of the date of his death and therefore is one of the enumerated dependents included in *N.J.S.A.* 34:15–13(g)." *Id.* at 179, 219 *A.*2d 616 (emphasis added). The Court relied on the law of Quebec because it had ruled that under the New Jersey adoption statute, "the mere taking of a child into a family and treating it as a natural offspring, without complying with the formal procedures as prescribed by law, is not adoption." *Id.* at 172, 219 *A.*2d 616. *See also In re Adoption of a Child by N.E.Y.,*

267 *N.J.Super.* 88, 95, 101, 630 *A.*2d 835 (Ch.Div.1993) (holding that death of adoptive parent during pendency of adoption proceedings precludes entry of judgment of adoption under New Jersey's adoption statute).

Adoption was not recognized in Anglo–American common law, and it is a creation of a statute, *N.J.S.A.* 9:3–37 *et seq.*, whose requirements must be satisfied before a judgment of adoption may be entered. *Stellmah, supra,* 47 *N.J.* at 171–172, 219 *A.*2d 616. We perceive no authority in the adoption statute to institute an adoption proceeding after a child's death. The polestar of an adoption is the best interests of the child, *N.J.S.A.* 9:3–48f, and not the interests of the adoptive parents. A judgment of adoption "shall establish the same relationships, rights, and responsibilities between the child and the adopting parent as if the child were born to the adopting parent in lawful wedlock." *N.J.S.A.* 9:3–50b. Upon a child's death, promotion of the child's best interests and the establishment of a new parental relationship are purposes which can no longer be served.[2] *See Venables v. Ayres,* 54 *Md.App.* 520, 459 *A.*2d 601, 603 (1983) (setting aside adoption judgment on ground that adoption proceeding abated on adoptive parent's death because the purpose of adoption "becomes incapable of fulfillment once the would-be parent has died"); *accord In re Estate of Freud,* 69 *Misc.*2d 906, 331 *N.Y.S.*2d 224, 225–26 (Sur.Ct.1972) (stating that adoption proceeding is nullified upon the death of either the adopted parent or child).

The motion judge also relied on the legal fiction of "equitable adoption." The concept of equitable adoption was defined in *Burdick v. Grimshaw,* 113 *N.J. Eq.* 591, 168 *A.* 186 (Ch.1933):

---

[2] *N.J.S.A.* 9:3–50b also provides: "For good cause, the court may direct the entry of judgment nunc pro tunc as of the date the action was instituted." The trial court did not rely on this sentence, and we need not address its construction because the child died before the adoption proceeding was instituted. Compare *N.J.S.A.* 9:17–45c, which provides that the "death of the alleged *father* shall not cause abatement of any action to establish paternity...." (Emphasis added.)

> It is now firmly established that an oral agreement to adopt, where there has been a full and faithful performance on the part of the adoptive child but which was never consummated by formal adoption proceedings during the life of the adoptive parent, will, upon the death of the latter and when equity and justice so requires, be enforced to the extent of decreeing that such child occupies in equity the status of an adopted child, entitled to the same right of inheritance from so much of his foster-parent's estate that remains undisposed of by will or otherwise, as he would have been had he been a natural born child.
>
> [*Id.* at 595, 168 *A.* 186.]

See *In re Adoption of a Child by N.E.Y., supra,* 267 *N.J.Super.* at 95–102, 630 *A.*2d 835 (recognizing the principle of equitable adoption, but denying its application); *see also Ashman v. Madigan,* 40 *N.J.Super.* 147, 150, 122 *A.*2d 382 (Ch.Div.1956) (finding that the statements and conduct of the adopting parent provided sufficient evidence of an agreement of adoption, despite absence of any direct evidence that such agreement existed); *see generally* G.A. Locke, Annotation, *Modern Status of Law as to Equitable Adoption or Adoption by Estoppel,* 97 *A.L.R.*3d 347 (1980)(Annotation).

Typically, the principle of equitable adoption is applied to benefit the foster child rather than the adoptive parent, and mainly in the context of allowing the child to inherit from a deceased parent's estate. Annotation, *supra,* at 354–55; *compare Hendershot v. Hendershot,* 135 *N.J. Eq.* 232, 238, 37 *A.*2d 770 (Ch.1944) (enforcing oral agreement to adopt, which was never executed, after adoptive parent's death in order to provide child with inheritance) *and Ruenbuhl v. Holland,* 250 *S.W.*2d 455, 457 (Tex. Civ.App.1952) (finding that foster child was equitably adopted for the purpose of sharing inheritance with decedents' heirs at law) *with Miles v. Theobald Indus.,* 144 *N.J.Super.* 535, 539, 366 *A.*2d 710 (App.Div.1976) (holding that foster parent of deceased worker did not qualify for death benefits under Workers' Compensation Act), *certif. denied,* 73 *N.J.* 51, 372 *A.*2d 316 (1977), *and Chavez v. Shea,* 185 *Colo.* 400, 525 *P.*2d 1148, 1149–50 (1974) (concluding that equitable adoption would not support foster parents' claim to welfare benefits); *see also Goss v. Franz,* 287 *S.W.*2d 289, 290 (Tex.Civ.App.1956) (holding that child could not maintain wrongful death action for foster parent's death in absence of statutory adoption proceedings).

■ We need not decide whether the principle of equitable adoption applies in the present case because the concept would not support the entry of a judgment of adoption. *In re Adoption of a Child by N.E.Y., supra*, 267 *N.J.Super.* at 96, 630 *A.*2d 835 (citing *Rodriguez v. Morris*, 136 *Misc.*2d 103, 519 *N.Y.S.*2d 451, 453 (Sur.Ct.1987)). As previously indicated, the principle is an equitable device to support a claim for benefits which would be available if a legally recognized parent-child relationship existed, such as claims for an intestate share, workers' compensation benefits, social security benefits, and life insurance benefits. Whether the equitable adoption concept is applicable must be decided in the context of a specific claim because each claim is distinct and is supported by policy considerations peculiar to it. Thus, Baby T's administrator's contention that principles of equitable adoption apply to sustain the action for medical malpractice must be made to the Law Division in the context of that claim and the wrongful death statute.

The order is reversed and the judgment of adoption is vacated as to Baby T only.

SHEBELL, P.J.A.D., dissenting.

I would affirm, substantially for the reasons set forth in the Chancery Division's comprehensive and cogent opinion, authored by William J. Cook, J.S.C. *In re Adoption Baby T.*, 308 *N.J.Super.* 344, 705 *A.*2d 1279 (Ch.Div.1997). Little additional comment is necessary.

Dr. Zedie, the physician alleged to have negligently caused Baby T's death, has no standing to attack the adoption judgment. Dr. Zedie purported to rely on *Rule* 4:50 to set aside the adoption judgment; however, the doctor was neither a party to the adoption judgment nor one of the party's legal representatives. *Baby T., supra*, 308 *N.J.Super.* at 349, 705 *A.*2d 1279. Thus, Dr. Zedie should not be permitted to use *Rule* 4:50 to set aside the adoption judgment, as the rule specifically limits relief from a judgment to "a party or the parties legal representative." *R.* 4:50-1.

The majority correctly states that "identification of [the] decedent's heirs and their pecuniary loss is central to the damage claims in the malpractice action." However, the majority's struggle to create standing for Dr. Zedie in the adoption judgment by inferring that the sole purpose for Baby T's adoption was to provide a legal foundation for the malpractice action is inappropriate, and unsupported by the record. On December 3, 1993, just two days after Baby T's birth, the adoptive parents entered into a written placement agreement with The Adoption Agency. These adoptive parents nurtured their "son" for four months prior to his unexpected death on March 31, 1994, when he died during a hernia repair operation. He was buried in the adoptive parents' family plot under the family name the adoptive parents gave him.

"Generally, standing requires that a litigant have a sufficient stake and real adverseness with respect to the subject matter of the litigation, and a substantial likelihood that some harm will fall upon it in the event of an unfavorable decision." *In re Howell Tp., Monmouth County,* 254 *N.J.Super.* 411, 416, 603 *A.*2d 959 (App. Div.), *certif. denied,* 127 *N.J.* 548, 606 *A.*2d 362 (1991); *In re N.J. Bd. of Pub. Util.,* 200 *N.J.Super.* 544, 556, 491 *A.*2d 1295 (App.Div. 1985). Dr. Zedie has not suffered injury as a result of the adoption of Baby T. As a stranger to the adoption judgment, the doctor's only stake or adverseness is found in the malpractice action brought on behalf of Baby T's estate, and is not directly derived from the adoption judgment. As the chancery judge noted, "Dr. Zedie's primary ... motive and interest in seeking relief at this late date [in the adoption proceeding] is to avoid the potential liability she may be exposed to in the wrongful death and survival action that has been brought against her by reason of the child's death." *Baby T., supra,* 308 *N.J.Super.* at 349, 705 *A.*2d 1279.

Further, the majority disregards the fact that the adoption judgment does not automatically create a "substantial likelihood of harm" against Dr. Zedie. Dr. Zedie suffers no direct harm as a result of the adoption judgment; she still has the opportunity to

present a complete defense to all of the wrongful death claims brought in the malpractice action. Indeed, none of the other defendants in the wrongful death action appear to have embarked on the course of collateral attack followed by Dr. Zedie.

Any lingering issues stemming from the adoption judgment may be considered by a jury in the wrongful death action by taking into account "all the circumstances disclosed by the evidence, ... all the uncertainties, contingencies, and reasonable probabilities of the particular case, [and] whether there was such a well founded expectation of pecuniary benefit to the decedent's next-of-kin to be derived from a continuance of the life of the decedent as could be estimated in money ..." *Capone v. Norton,* 21 *N.J.Super.* 6, 9–10, 90 *A.*2d 508 (App.Div.1952); *See also N.J.S.A.* 2A:31–5 ("In every action brought [under the Wrongful Death Statute] ... the jury may give such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death ... to the persons entitled to any intestate personal property of the decedent.").

As to the substantive issues presented on the adoption appeal, I make two additional observations. First, the majority fails to consider the best interests of the adoptive parents. Although consideration of the best interests of the child is the polestar of an adoption proceeding, protection of the adopting parents' interests is also a factor. *See In re Adoption of Children by O,* 141 *N.J.Super.* 586, 589, 359 *A.*2d 513 (Ch.Div.1976) (noting that the protection of the adoptive parents' interests should be considered along with the child's interests); *In the Matter of the Adoption of G,* 89 *N.J.Super.* 276, 281, 214 *A.*2d 549 (Cty.Ct.1965) (taking protection of the adoptive parents into consideration); *N.J.S.A.* 9:3–37 ("This act shall be liberally construed to the end that the best interests of children be promoted. Due regard shall be given to the rights of all persons affected by an adoption").

Here, under the specific facts and circumstances of this case, the interests of both Baby T and the adoptive parents would best be served by allowing the posthumous adoption judgment to stand.

*Cf. Stellmah v. Hunterdon Coop. G.L.F. Service, Inc.* 47 *N.J.* 163, 219 *A.*2d 616 (1966) (allowing for a posthumous adoption judgment after the prospective adoptive father died in order to allow for the adopted child's entitlement to workers' compensation death benefits). As the chancery judge noted, Baby T's "physical death, allegedly at the hands of Dr. Zedie, should not also be the death knell for his best interests." *Baby T, supra,* 308 *N.J.Super.* at 363, 705 *A.*2d 1279. To not allow Baby T's adoption to stand in this case would effectively prevent any redress against the doctor who allegedly caused the adopted child's death. *See N.J.S.A.* 2A:31–4 ("The amount recovered in proceedings under [the Wrongful Death statute] should be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same."). Moreover, as set forth in the certification of the adoptive father: "we obtained an Order of Adoption [ ] [as it] was important to us to know our son died as a member of our family...."

Finally, the majority's suggestion that the adoptive parent's equitable adoption argument may be made in the Law Division in the context of the malpractice claim and the wrongful death statute, and not in the adoption proceeding where it was first raised, is *nothing more than an offer of false hope.* The majority's holding insinuates that all is not lost for Baby T's wrongful death claim and that there is still some chance for the claim to proceed. However, the equitable adoption argument should not be heard in the Law Division thereby expanding the limitations of the wrongful death statute. Without a judgment of adoption, Baby T's prospective adoptive parents should not be able to make a claim under *N.J.S.A.* 2A:31–4 because they are not intestate heirs. An equitable adoption argument in the Law Division in this case would be, in effect, an argument for an expansion of covered parties under the Wrongful Death statute. Expansion of the Wrongful Death Act is for the Legislature and not the courts.

An equitable argument, such as the one presented here, is more appropriately decided by the Chancery Division, where the Family Part maintains inherent equitable powers and possesses the sovereign power of *parens patriae,* which charges the court with protecting the interests of children. *See Sheridan v. Sheridan,* 247 *N.J.Super.* 552, 558–59, 589 *A.*2d 1067 (Ch.Div.1990); *Matter of Adoption of a Child by McKinley,* 157 *N.J.Super.* 293, 384 *A.*2d 920 (Ch.Div.1978). Based on these equitable principles, and the facts and circumstances uniquely presented by this case, the chancery judge's equitable adoption holding was properly made in the adoption proceeding and should stand. Baby T "should not be allowed to be placed in some sort of legal limbo. Equity should not and cannot permit such a bizarre result in this case." *Baby T., supra,* 308 *N.J.Super.* at 364, 705 *A.*2d 1279. I would, therefore, affirm.